United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-2682EA

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| James L. Mooring, * | | |
| | * | Appeal from the United States |
| Appellant, | * | District Court for the Eastern |
| _____ | * | District of Arkansas. |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Cheryl D. Mooring, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 9, 1997
Filed: February 25, 1998

_____

Before FAGG, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

FAGG, Circuit Judge.

After receiving information about drug activity on a farm owned by James L. Mooring and Cheryl D. Mooring, the police placed the farm under surveillance. Observing the farm at night, the police saw light coming from a barn and used a thermal imager to identify the barn as a heat source. An officer then entered the property, walked next to the barn and heard a buzzing noise the officer recognized as coming from electrical equipment used to grow marihuana. The police obtained a warrant and searched the barn, finding more than 250 marihuana plants growing there. The Moorings moved to suppress this evidence, asserting the officer's entry onto their property was a warrantless search in violation of the Fourth Amendment because the barn was within the farmhouse's curtilage. After a hearing, the district court denied the Moorings' motion. Mr. Mooring entered conditional guilty pleas to charges of manufacturing and possessing with intent to distribute marihuana, see 21 U.S.C. § 841(a)(1) (1994), and Ms. Mooring entered a conditional guilty plea to misprision of a felony, see 18 U.S.C. § 4 (1994). The Moorings now appeal the denial of their suppression motion. We affirm.

The Fourth Amendment protects people from unreasonable searches of their home and buildings within the home's curtilage, but police officers may enter a resident's property to observe buildings located outside the home's curtilage. See United States v. Dunn, 480 U.S. 294, 300-04 (1987). In deciding whether the Moorings' barn was within their farmhouse's curtilage, the "central component" we consider is "whether the [barn] harbor[ed] the intimate activity associated with the sanctity of [the Moorings' farmhouse] and the privacies of [their] life." Id. at 300 (internal quotations omitted). Several factors are relevant to our decision: the proximity of the barn to the farmhouse, whether the farmhouse and barn are within the same enclosure, the nature and uses of the barn, and the steps the Moorings took to protect the barn from being seen by others. See id. at 301. We do not apply these factors mechanically, but use them to consider if the Moorings' barn "is so intimately tied to the [farmhouse] itself that [the barn] should be placed under the [farmhouse's] 'umbrella' of Fourth Amendment protection." Id.

After reviewing the record in light of the relevant factors, we conclude the district court's finding that the barn was not within the farmhouse's curtilage was not clearly erroneous. See United States v. Friend, 50 F.3d 548, 552 (8th Cir. 1995), vacated on other grounds, 116 S. Ct. 1538 (1996). The barn's distance of forty to fifty yards from the farmhouse neither clearly favors nor disfavors including the barn within the farmhouse's curtilage. See United States v. Reilly, 76 F.3d 1271, 1277 (2d Cir. 1996) (building 375 feet from a house is within the home's curtilage); but see United States v. Brady, 993 F.2d 177, 178 (9th Cir. 1993) (barn forty-five feet from a house is not within the house's curtilage). The Moorings contend a tree line about one hundred yards from the barn marked their farmhouse's curtilage like a fence, but nothing in the record suggests the trees satisfy the requirements of an enclosure around the barn. See Reilly, 76 F.3d at 1277-78. Contrary to the Moorings' testimony about their use of the barn, an officer testified the barn was only used to warehouse junk-like items and grow marihuana. After seeing a video tape of the barn's interior, the district court noted "that a picture is worth a thousand words," and the video confirmed the barn was not associated with the Moorings' domestic life. Also, the police had objective information the Moorings did not use the barn "for intimate activities of the home." Dunn, 480 U.S. at 302. This information included dramatic increases in the Moorings' electrical bills consistent with indoor marihuana-growing operations, the unconcealed heat emissions from the lighted barn, the unmuffled noises from the marihuana-growing equipment, and the absence of signs or fences restricting strangers' access to the barn. Finally, although the officer's obscured view of the barn from a public road about a quarter of a mile away favors including the barn in the curtilage, see Reilly, 76 F.3d at 1279, this fact in itself does not establish the barn should be included within the farmhouse's Fourth Amendment protection.

Based on our review of the record, we believe substantial evidence exists to support the district court's finding that the barn was outside of the farmhouse's curtilage, and we affirm the district court's ruling.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.