# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1655

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Michael K. Gerard, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2003

Filed: April 2, 2004

_____

Before RILEY, HEANEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Michael K. Gerard argues on appeal that his Fourth Amendment right to be free from unreasonable search and seizure was violated. Gerard's argument is premised on the fact that a police officer, without a warrant, climbed a ladder and attempted to look inside his garage through a ventilation opening. Finding no constitutional error, we affirm the district court.

## I. *Background*

On February 17, 2002, Nebraska State Patrolmen entered Gerard's farm property to locate Gerard because events earlier that night raised concern for his

safety.[1] Upon arrival at the farmstead, Trooper Jeff Crymble observed a pickup truck parked in a gravel driveway. The driveway separated the farmhouse from a two-story, two-car garage (with a motorcycle visible inside). A fenced yard surrounded the farmhouse. Crymble noticed two Rottweiler dogs within the fenced yard. The fence did not enclose the garage.

Crymble and the other trooper began looking for Gerard or any other persons present on the property. Crymble heard music coming from the garage. He attempted to enter the garage by lifting the overhead doors; however, all the doors were locked. He knocked on the garage door, but no one responded. Crymble testified that he could see through some of the windows in the garage and noticed a radio located on the first floor and that lights were on inside the garage. Using an extension ladder, which he found lying on the ground next to the garage, Crymble ascended the ladder in an attempt to see inside through a vent at the top of the garage. Moments before reaching the vent, Crymble smelled the aroma of raw marijuana coming from the garage.

Immediately, Crymble descended the ladder and notified his supervisor, Richard McKain. Based on Crymble's observation, McKain completed an affidavit

---

[1] In the early morning of February 17, 2002, troopers chased a stolen vehicle near Roscoe, Nebraska. The chase ended when troopers lost the vehicle south of Roscoe. Trooper Jeff Crymble of the Nebraska State Patrol was assigned to assist in a stolen-car investigation in the Roscoe area. While assisting in the search, a patrol unit spotted two men running in a field near the Roscoe exit. The two men were apprehended. Crymble conducted an officer-safety search of the two men. One of the men possessed Gerard's credit card. Gerard was not with them. Crymble took the credit card and attempted to contact the credit-card company in order to locate Gerard. A phone call was placed to Gerard's residence. The officers testified that it sounded as though someone answered the phone at Gerard's residence but then immediately hung up. Upon this event, the officers decided they should go to Gerard's house to find out why the arrested suspects had Gerard's credit card and to follow up on the stolen-vehicle investigation.

and obtained a search warrant for Gerard's farmstead including the two-story, two-car garage. The subsequent search recovered marijuana. Three days later, Gerard was indicted for manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846.

On May 6, 2002, Gerard filed a motion to suppress the evidence obtained from the search of his garage on the ground that evidence supporting the search warrant was based on an illegal search. On July 18, 2002, a suppression hearing was held before a magistrate judge. The magistrate concluded that Crymble's obtaining and climbing a ladder to look inside the locked garage constituted a search of Gerard's property. The magistrate also concluded that the officer lacked probable cause to search Gerard's garage, and that no exigent circumstances justified the warrantless search. The magistrate judge recommended that the motion to suppress be granted. The government filed objections to the magistrate judge's report and recommendation.

The district court[2] denied the motion to suppress. In its order, the district court first reasoned that the *Leon* good-faith exception applied.[3] However, the district court also found that the warrant was supported by probable cause. The district court denied Gerard's motion to suppress in an order filed September 19, 2002.

---

[2] The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

[3] The court found the warrant to be facially valid, that the county judge issuing the warrant was a neutral and detached magistrate, and that the affidavit was not so lacking in probable cause that no reasonable officer would have relied on the warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984) (holding that where an officer relies in objective good-faith on a seemingly valid search warrant the evidence obtained in the search is not excluded).

Subsequently, Gerard pleaded guilty to possession of marijuana with intent to manufacture and distribute, in violation of 21 U.S.C. § 841. At a sentencing hearing held on February 27, 2003, the district court sentenced Gerard to twelve months and one day in prison, three years supervised release, and ordered a $100 special assessment. Gerard argues on appeal that the search warrant lacked probable cause and the evidence obtained under its authority should have been suppressed. He contends that Crymble conducted an illegal search when he climbed the ladder to peer through the vent of Gerard's locked garage. We disagree and hold the search was constitutionally valid.

## II. *Discussion*

We traditionally employ the "clearly erroneous" standard in reviewing the district court's findings supporting a denial of a motion to suppress evidence obtained by a warrantless search, *United States v. Ball*, 90 F.3d 260, 262 (8th Cir. 1996), but we review legal conclusions de novo. *United States v. Davis*, 288 F.3d 359, 362 (8th Cir. 2002) (citing *United States v. Boyd*, 180 F.3d 967, 975 (8th Cir. 1999)).

Gerard's principal argument is that Trooper Crymble's use and ascent of a ladder on the side of the garage constituted an impermissible warrantless search and thus invalidated the subsequent warrant-based search. Gerard's position is that without the information obtained by climbing the ladder the warrant would not have been supported by probable cause. Based on our review, we conclude no prohibited search occurred prior to issuance of the warrant and that probable cause supported the warrant.

### A. *Farmhouse's Curtilage*

The Fourth Amendment protects a home and its curtilage –the area immediately surrounding a dwelling house–from unreasonable warrantless searches. *United States*

*v. Dunn*, 480 U.S. 294, 300–04 (1987). However, this protection does not extend past the curtilage. Officers are permitted to enter a resident's property to observe buildings located outside the home's curtilage. *United States v. Mooring,* 137 F.3d 595, 596 (8th Cir. 1998). The central component in deciding whether Gerard's garage was within the curtilage of his farmhouse is to determine "whether the [garage] harbor[ed] the intimate activity associated with the sanctity of [Gerard's] home and the privacies of [his] life." *Dunn*, 480 U.S. at 300 (internal quotation marks omitted); *United States v. Mooring*, 137 F.3d 595, 596 (8th Cir. 1998).

We resolve curtilage questions with particular reference to four factors: the proximity of the garage to the farmhouse, whether the farmhouse and garage are within the same enclosure, the nature and uses of the garage, and the steps Gerard took to protect the garage from being seen by others. *Dunn*, 480 U.S. at 301; *Mooring*, 137 F.3d at 596. ""[E]very curtilage determination is distinctive and stands or falls on its own unique set of facts."" *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir. 1998) (quoting *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir. 1996)). Therefore, these factors are analytical tools used in determining whether Gerard's garage was so intimately tied to the farmhouse itself that it should be placed under the farmhouse's umbrella of Fourth Amendment protection. *Dunn*, 480 U.S. at 301.

Applying these four factors to Gerard's farmstead and the area immediately surrounding it, the district court's finding that the garage lay outside the curtilage of the farmhouse was not clearly erroneous. First, the record does not contain evidence of the distance from Gerard's house to his garage. Neither party included in its brief the proximity of the garage to the farmhouse. However, Crymble testified that the farmhouse and garage are in close proximity. The distance alone, however, is not determinative that the garage should be treated as an adjunct of the house.

Second, Gerard's garage did not lie within the fence surrounding the farmhouse. However, Gerard urges that the natural enclosure of trees surrounding both the farmhouse and the garage mark the home's enclosure and that the land within it is protected by the home's curtilage. Specifically, Gerard argues that this wooded vegetation surrounding the farmhouse and the garage, enclosing both into the same wooded area, mark the farmhouse's curtilage similar to the protected curtilage found in *Daughenbaugh*. 150 F.3d at 599. The fact that one's view from the road of the garage is obscured by the trees does not itself establish that the garage should be included within the farmhouse's Fourth Amendment protection. *Reilly*, 76 F.3d at 1277–78) (explaining that the enclosure factor weighs against those who claim infringement of the curtilage when their land is divided into separate parts by internal fencing).

The facts of *Daughenbaugh* are readily distinguishable from the facts of the case at bar. The garage in *Daughenbaugh* was in the backyard of the house and there was no artificial enclosure. 150 F.3d at 598–99. The Sixth Circuit concluded that the garage in the backyard of the house was sufficiently blocked from public view by natural barriers and weighed this factor in favor of finding that the garage was within the home's curtilage. *Id.* In contrast, Gerard's land is divided into separate parts by an internal fence enclosing Gerard's farmhouse. Unlike the garage in *Daughenbaugh*, Gerard's garage is located to the immediate left of the farmhouse and separated from it by a driveway.

Third, Gerard contends that the parking of his car and motorcycle in the garage are evidence that his garage was used for activities and privacies of domestic life requiring Fourth Amendment protection. Contrary to Gerard's testimony about his use of the garage, Crymble testified the garage appeared to only be used to store junk and grow marijuana. However, Crymble did not have this evidence concerning Gerard's use of the garage before he climbed the ladder. Objective data does not include that

found only *after* officers have invaded the area in question. *Reilly*, 76 F.3d at 1279 (emphasis added). We believe that reasonable officers would expect that the garage was likely to be used for private activities. The garage's doors were locked, electricity was wired to the garage, and it was close to the farmhouse, which are typical signs of private activities. The third *Dunn* factor weighs in favor of finding that Gerard's garage was protected. However, these factors are not applied mechanically or in isolation; therefore, this factor alone does not require us to conclude that Gerard's garage was intimately tied to the farmhouse.

Fourth, Gerard contends that he took steps to prevent casual onlookers standing in open fields from viewing inside the garage. The garage was set back from the road, situated so that it did not face the road. Gerard attempted to prevent public access to his garage by placing locks on all three of the doors to the garage. In addition, Gerard secreted the interior of the garage by placing plastic and cardboard in the windows. Also, the contents of the garage were not visible from aerial surveillance.

However, the evidence also shows Gerard's driveway led from the road directly to the garage. No internal fences prevented persons from approaching the garage. Also, Gerard posted no signs excluding strangers from access to the garage. Gerard did nothing to cover the marijuana odor escaping from the vent of the garage. Lastly, the garage was not completely blocked from view of members of the public driving down the street. Based upon the evidence in this case, we cannot say the district court clearly erred in finding that Gerard's garage was not within the farmstead's curtilage. We conclude that Crymble did not conduct an illegal search when he climbed the ladder to peer through the vent of Gerard's locked garage. *United States v. Gill*, 354 F.3d 963, 969 (8th Cir. 2004) (finding that an officer was entitled to place a ladder against a building to look through an open window to ensure that no one inside was in need of assistance).

## B. *Probable Cause*

On appeal of the grant or denial of a motion to suppress, we review the district court's conclusions of law on probable cause de novo. *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000). "When reviewing the sufficiency of an affidavit to support a finding of probable cause, we must consider the totality of the circumstances." *United States v. Wells*, 223 F.3d 835, 839 (8th Cir. 2000). "A search is supported by probable cause if facts are shown making it likely that evidence of a crime will be found in the place to be searched." *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002).

The Supreme Court recognizes that the odor of an illegal drug can be highly probative in establishing probable cause for a search. *Johnson v. United States*, 333 U.S. 10, 13 (1948); *accord United States v. Caves*, 890 F.2d 87, 91 (8th Cir. 1989). Circuits have held that the odor of marijuana, standing alone, is sufficient to support probable cause. *United States v. Tobin*, 923 F.2d 1506, 1512 n.4 (11th Cir. 1991); *United States v. Nielson,* 9 F.3d 1487, 1490–91 (10th Cir. 1993); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002); *United States v. Moore*, 329 F.3d 399, 405 (5th Cir. 2003).

Here, McKain's affidavit provided (1) evidence that the officers believed that Gerard could be hurt within the garage, (2) that someone was recently in the garage because a light was on inside and music was coming from a small radio located on the floor inside the garage, (3) that Gerard's credit card was found on a recent arrestee, and (4) that the odor of marijuana was emanating from the vent of the garage when Crymble climbed the ladder. Given the totality of the circumstances present, we conclude that the affidavit stated sufficient facts making it likely that evidence of a crime would be found in Gerard's garage. Because we hold that there was probable cause supporting the search warrant, we need not address whether the district court erred in applying the *Leon* good-faith exception.

### III. *Conclusion*

Based on the foregoing analysis, we affirm the decision of the district court.

_____