# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3212
_____

United States of America

*Plaintiff - Appellee*

v.

Chris C. Bausby

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 9, 2013
Filed: July 11, 2013
_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ROSE,[1] District Judge.
_____

SHEPHERD, Circuit Judge.

Chris C. Bausby pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As part of his plea, Bausby reserved

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, sitting by designation.

the right to appeal the district court's[2] denial of his motion to suppress evidence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

One June day, Eric Haase was driving home from work when he passed by Chris Bausby's residence in Kansas City, Missouri. Haase noticed a motorcycle inside the chain-link fenced front yard of the residence that resembled a motorcycle stolen from him some months earlier. The motorcycle had a "For Sale" sign next to it, bearing a phone number. Haase called the police and waited near the Bausby residence for officers to arrive.

Officers Cole Massey and Shawn Oden of the Kansas City, Missouri Police Department (KCPD) were dispatched to the Bausby residence. After they arrived, Haase pointed out the motorcycle he believed to be his. Haase explained that the motorcycle appeared to have alterations he had made, and he provided the Vehicle Identification Number (VIN) for his stolen motorcycle. The officers entered the front yard of Bausby's residence through an unlocked, unchained gate in the chain-link fence. The chain-link fence had at least one "Beware of Dog" sign, but there was no dog in the front yard at the time. The fence did not bear a "No Trespassing" sign.

---

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

The front door of the residence was only accessible after entering the fenced-in front yard. The officers knocked on the front door of the residence, but no one answered.[3]

The officers then checked the VIN number on the motorcycle in the yard, confirming that it matched the VIN number Haase had provided to them and confirming with a dispatch officer that it matched the VIN number Haase had reported two months earlier to police. The officers then observed several automobiles in an unfenced driveway shared with a neighboring residence. Some of the automobiles had missing VIN numbers. An Oldsmobile Alero that was in the shared driveway and still had a VIN number had also been reported stolen.

Officers Massey and Oden contacted the property crimes division of the KCPD. Sergeant Brad Lemon and Detective John Straubel of the Metro Property Crimes Task Force were dispatched to the Bausby residence. In preparation for obtaining a search warrant, Sergeant Lemon instructed the officers at the scene to secure the residence and not allow anyone to enter the property. After Detective Straubel talked with other officers at the scene, made independent observations, and obtained a legal description of the property, he returned to the police station to prepare an affidavit and apply for a search warrant.

Bausby later arrived at his residence. When he identified himself, officers took him into custody on an outstanding warrant. After being placed in custody but before being removed from the scene, Bausby told officers he had paperwork that would

---

[3]There is some discrepancy in the testimony about whether officers knocked on the front door first or approached the motorcycle first. Although Bausby's brief takes some exception with the district court's finding that officers knocked at the front door prior to checking the VIN number on the motorcycle, he does not argue that the district court clearly erred in this finding. We agree that finding is not clear error, and we accept that officers knocked on the front door prior to checking the VIN number on the motorcycle.

prove his ownership of all the vehicles at his residence. Officers refused to allow Bausby to enter his residence or his tow truck to collect the paperwork. Bausby testified, however, that a female witness retrieved some of the paperwork but that officers refused Bausby's request that officers examine the paperwork. Detective Straubel testified that he was unaware that Bausby had attempted to provide the paperwork to the officers at the scene.

A Missouri state judge issued a search warrant for Bausby's residence. During the ensuing search, officers found a 12-gauge shotgun in the residence. A federal grand jury indicted Bausby for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Bausby moved to suppress the firearm, but the district court denied the motion. Bausby entered a conditional guilty plea to the indictment, reserving his right to appeal the denial of the motion to suppress.

II.

In his motion to suppress, Bausby raised two arguments. First, he claimed that the officers' warrantless entry into the chain-link fenced front yard of his residence violated the Fourth Amendment because that area constituted the curtilage of his home and the officers had no justification for the warrantless invasion. Second, he argued that under Franks v. Delaware, 438 U.S. 154 (1978), the affidavit would not have been sufficient to support a probable cause finding had the affidavit included the fact that Bausby possessed documentation showing he had lawfully purchased the motorcycle and other vehicles on the property. The district court rejected both of these arguments.

On appeal, we review findings of fact for clear error and the determination of whether there has been a Fourth Amendment violation de novo. See United States v. Inman, 558 F.3d 742, 745 (8th Cir. 2009). We note that under prior circuit precedent, we review a district court's specific determination of whether certain

property lies inside or outside a home's curtilage for clear error. See United States v. Wells, 648 F.3d 671, 675-76 (8th Cir. 2011) (citing United States v. Gerard, 362 F.3d 484, 487 (8th Cir. 2004) and United States v. Mooring, 137 F.3d 595, 596 (8th Cir. 1998)). We recognize, however, that all circuits to consider the standard of review after Ornelas v. United States, 517 U.S. 690 (1996), have applied de novo review to curtilage determinations, and we would reach the same conclusion in this case under either standard.

## A.

"At the [Fourth] Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)). "[T]he area 'immediately surrounding and associated with the home'—what our cases call the curtilage—[is regarded] as 'part of the home itself for Fourth Amendment purposes.'" Id. (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)).

"Determining whether a particular area is part of the curtilage of an individual's residence requires consideration of 'factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself.'" United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006) (quoting United States v. Dunn, 480 U.S. 294, 300 (1987)). Although the facts of each case are unique, we resolve curtilage questions "with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301. A given Dunn factor may weigh in favor of finding that the area is curtilage, while another may not. "[T]hese factors are not applied mechanically or in isolation." See Gerard, 362 F.3d at 488.

-5-

We agree with the district court that the area of the front yard where the motorcycle was displayed does not constitute curtilage. A couple of the factors support a finding of curtilage. For example, the front yard is in close proximity to the home, and it is enclosed with a chain-link fence. See Boyster, 436 F.3d at 991 (noting that curtilage "is typically comprised of land adjoining a house, often within some type of enclosure such as a fence"). However these factors are outweighed by the fact that Bausby took affirmative steps to draw the attention of the public to the front yard of his residence. Specifically, he used this area to display the motorcycle and other items he was selling to the public who passed by his residence. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351 (1967). Moreover, while the area was fenced, the fence was only a four or five foot chain-link fence and not a fence designed to limit the observation of those passing by. Also, a visitor who wished to approach the front door of the residence would have to enter the fenced front yard first. Cf. Jardines, 133 S. Ct. at 1415 ("[An] implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."). Considering the Dunn factors in total, the district court did not err when it determined that the front yard of Bausby's residence where he displayed Haase's stolen motorcycle was outside the curtilage of the home, and therefore the officers could enter that area to observe the motorcycle and its VIN number more closely without violating Bausby's Fourth Amendment rights.[4]

---

[4]Because we reach this outcome, we need not address whether the officers had a legitimate law enforcement objective in entering the front yard—the alternative basis for the district court's denial of the motion to suppress on this issue. See United States v. Weston, 443 F.3d 661, 667 (8th Cir. 2006) ("Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited.").

B.

Bausby also argues the district court erred when it held that Detective Straubel's affidavit did not violate Franks when the affidavit omitted that Bausby attempted to provide paperwork demonstrating his ownership of the motorcycle and other vehicles on his property.

To void a search warrant under Franks based on a claim of factual omission, a defendant must show by a preponderance of the evidence "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002). If a defendant shows a Franks violation, then "the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 156. In footnote 8 of the district court's decision, the court found "there is no evidence to support a finding that the officers involved omitted Bausby's contention with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." (Report and Recommendation 11 n.8.) The question of whether officers acted with intent or reckless disregard is a factual question we review for clear error. United States v. Finley, 612 F.3d 998, 1002 (8th Cir. 2010).

At the time Bausby requested that he be allowed to retrieve the documents from his home, he was in custody on an outstanding arrest warrant. The officers had secured the scene where it appeared multiple stolen vehicles were present while a search warrant was being sought. For purposes of officer safety and to prevent the destruction of incriminating evidence, officers acted reasonably in refusing Bausby's request to enter his residence or to allow a witness to enter his residence to retrieve the paperwork. See United States v. Roby, 122 F.3d 1120, 1125 (8th Cir. 1997) (holding officers acted reasonably in securing hotel room while awaiting search

warrant due to the possible destruction of evidence and to assure officers' safety). At the time Bausby arrived on the scene, officers had determined that the motorcycle had been reported stolen and that at least one automobile located in the shared driveway had been reported stolen. Detective Straubel had conducted his initial investigation and returned to the police station to prepare the search warrant affidavit before Bausby's arrival and before Bausby made his requests. Accordingly, the district court did not commit clear error when it determined that Bausby failed to show officers intentionally omitted Bausby's request from the affidavit or acted with reckless disregard of whether that information would make the affidavit misleading. Further, there is no evidence Detective Straubel, who was tasked with applying for the search warrant, was ever aware of Bausby's contention, thus there is no evidence that he intended to make the affidavit false or misleading. As there has been no showing of a deliberate or reckless omission, we do not reach the question of whether the inclusion of the omitted facts in Detective Straubel's affidavit would have eliminated the basis for the probable cause finding.

III.

Accordingly, the district court properly denied Bausby's motion to suppress the firearm located during the search of his residence. We affirm Bausby's conviction.[5]

---

[5]Bausby has submitted a pro se supplemental filing with the court. Generally, it is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel. United States v. Halverson, 973 F.2d 1415, 1417 (8th Cir. 1992) (per curiam). Nevertheless, we have examined his pro se supplemental filings and find the additional arguments to be meritless.

ROSE, District Judge, concurring in the judgment.

I join Parts I, II.B, and III of the opinion of the court, but I decline to join Part II.A. Under a de novo[6] standard of review, I would have found the front yard where the motorcycle was displayed to constitute curtilage.

Although the court correctly identified the factors set forth in United States v. Dunn, 480 U.S. 294, 300 (1987), as guiding the curtilage inquiry, I believe application of those factors reveals Bausby's front yard was curtilage of his home.

There is no dispute that the first two Dunn factors support a curtilage finding. The front yard—the area officers entered without a warrant—is immediately adjacent to the home and the entire area is enclosed by a chain link fence. United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006) ("Curtilage . . . is typically comprised of land adjoining a house, often within some type of enclosure such as a fence.").

With respect to third and fourth factors, I believe too much emphasis has been placed on Bausby's use of his front yard to advertise the sale of the motorcycle. Although this conduct is inconsistent with a desire to avoid observation of his yard, it is not dispositive of the curtilage inquiry and, in my view, does not outweigh his other attempts to ensure the privacy of his front yard. By enclosing the area immediately adjacent to his home in a chain link fence, typically locking the only entry through that fence, and placing a "Beware of Dog" sign on the fence, Bausby manifested an intent to keep the yard free from public intrusion. The mere fact that a visitor would need to enter the front yard to approach the house does not alter this intention. Nor does the location of an object for sale within that yard eliminate such an intent. Indeed, the inclusion on the sale sign of Bausby's telephone number could

---

[6]I would not find the district court clearly erred in finding the front yard where the motorcycle was displayed for sale was not curtilage.

demonstrate Bausby's intention to control whether any interested buyers were permitted within the yard to inspect the motorcycle. Thus, on a balance, I would find the front yard of Bausby's residence constituted curtilage.

However, I concur in result in this case because even if the front yard were curtilage, the officers entered the area for a legitimate law enforcement purpose with limited intrusion, thereby complying with the Fourth Amendment. United States v. Robbins, 682 F.3d 1111, 1115 (8th Cir. 2012) ("Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited."). This court has "held that a police entry through an unlocked gate on a driveway to approach the front door of a residence for a 'knock-and-talk' is a reasonable, limited intrusion for legitimate law enforcement objectives." Id.

Here, having responded to a report of a discovered stolen motorcycle, the officers entered Bausby's yard through an unlocked fence. They went directly to the front door and attempted to reach the homeowner, or conduct a "knock-and-talk." See United States v. Weston, 443 F.3d 661, 667 (8th Cir. 2006) ("[T]he officers approached the front door to announce their presence, to inquire about the stolen vehicles, and to request consent to search the remainder of the property. This tactic, commonly referred to as a 'knock and talk' was a reasonable investigative technique under these circumstances."). After receiving no response, the officers approached the motorcycle and checked the visible VIN against the one Haase provided. The officers restricted their movements only to approaching the front door and viewing the motorcycle; they did not even search the perimeter of the home or look through exterior windows. See, e.g., Robbins, 682 F.3d at 1116 (finding a search of the perimeter of a home and view of the home through exterior windows to be minimally intrusive). Because the officers entered the yard for a legitimate law enforcement purpose—to ask the homeowner about the allegedly stolen motorcycle displayed in his front yard—and performed only minimally intrusive investigation once there, the

-10-

officers' entry into the curtilage was not unreasonable and did not violate the Fourth Amendment.

_____