

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101647 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael F. Stelzer |
| SHON TURNER, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 6, 2015 |

## Introduction

Appellant Shon Turner ("Turner") appeals from the judgment of the trial court entered following a jury verdict. The jury found Turner guilty on two counts: unlawful possession of a firearm and possession of drug paraphernalia. Before trial, Turner filed a motion to suppress all evidence obtained during the execution of a search warrant on his residence. Turner argues that the trial court erred in denying his motion to suppress for two reasons. First, Turner contends the trial court erred in denying his request for a Franks hearing because Turner made a substantial preliminary showing that police intended to make, or recklessly disregarded the possibility of making, material omissions in the affidavit supporting the search warrant application. Second, even without a Franks hearing, Turner contends the trial court erred in denying his motion to suppress because the information contained within the affidavit does not support a finding of probable cause. Because the trial court did not abuse its discretion in denying a Franks hearing,

and because the judge who issued the search warrant had a substantial basis to find probable cause, the judgment of the trial court is affirmed.

Factual and Procedural History

Turner was convicted after a jury trial on two counts: unlawful possession of a firearm (Count I) and possession of drug paraphernalia (Count II). The charges stemmed from a search warrant that police executed on 2855 Utah in the City of St. Louis. Turner filed a pretrial motion to suppress the evidence obtained during the search alleging that the evidence was the fruit of an illegal search under both the United States Constitution and the Missouri Constitution.

## I.    The Affidavit in Support of the Search Warrant Application

In August 2013, Detective Jason Collins ("Detective Collins") was investigating Turner and his home at 2855 Utah. Detective Collins believed Turner was selling drugs out of the house. On August 15, 2013, Detective Collins applied for a search warrant for 2855 Utah from Judge Thomas Clark. The affidavit accompanying the warrant application detailed the facts of Detective Collins's investigation.

The affidavit explained Detective Collins's interaction with another detective on the force, Detective Andrei Nikolov ("Detective Nikolov"). Detective Nikolov advised Detective Collins that he had a confidential informant ("CI"). Detective Nikolov had "conducted" a buy/walk operation[1] "utilizing [that CI], wherein a quantity of heroin was purchased from 'ST,' who was later identified as Shon Turner." This buy/walk operation took place at 2855 Utah.

The affidavit also explained computer searches Detective Collins conducted regarding Turner and 2855 Utah. The utility bill for 2855 Utah revealed active service for an "M.

---

[1] A buy/walk operation is "when a police officer or detective uses an informant to purchase narcotics from a specific location."

Turner."[2] A computer inquiry of the name "ST" and "Shon Turner" revealed a photo of Turner, "AKA 'ST.'" Detective Collins included a photograph of 2855 Utah. A computer search returned Turner's Social Security Number and a date of birth. Detective Collins also found Turner's history of criminal arrests, which included weapons-and drug-related arrests, and "numerous felony convictions."

On August 7, 2013, Detective Collins met a different CI and showed that CI a photograph of Turner. The CI positively identified the individual as "Shon Turner, AKA 'ST,' the person selling heroin at 2855 Utah." The CI had been purchasing heroin from Turner at 2855 Utah for approximately two months. The CI stated that the heroin was in Turner's "bedroom and various other locations throughout the residence." The CI also observed a weapon inside the residence, which the CI described as a semi-automatic handgun. The CI explained that Turner used the weapon to protect illegal narcotics and the proceeds from the sale of those narcotics. The CI outlined the procedure for Turner's narcotics sales: transactions at 2855 Utah took place at the front door or in the living room of the residence. The CI also explained that Turner sometimes delivered the heroin to customers in the neighborhood.

In the affidavit, Detective Collins described the surveillance he conducted to corroborate the CI's information. On August 13 and 14, 2013, Detective Collins and his partner surveilled 2855 Utah. The first night, the officers did not observe any foot or vehicle traffic coming to or from the home. The second night, the detectives observed Turner exit 2855 Utah and stand on the front steps of the residence. The affidavit explained:

> After approximately two minutes, a tan four door vehicle occupied by a black male drove west on Utah and stopped in the middle of the street in front of 2855 Utah. [My partner] and I observed Shon Turner walk down the steps, approach

---

[2] Turner's sister is Marquita Turner.

3

the passenger side of the tan vehicle and conduct what we believed to be a hand to hand transaction for illegal narcotics. After the hand to hand transaction, Shon Turner cautiously looked around as if he were attempting to detect law enforcement, and then ran back inside of 2855 Utah.

Finally, the affidavit detailed an interaction with a CI that occurred within twenty-four hours before the warrant application:

> [T]he confidential informant contacted me by phone and advised me that he/she was inside of 2855 Utah with Shon Turner and observed him to be in possession of a quantity of heroin, which was packaged for sale. The confidential informant also observed Shon Turner in possession of the handgun.

Based on this information, Judge Clark signed a search warrant for 2855 Utah on August 15, 2013.

## II. Execution of the Search Warrant

Detective Collins executed the search warrant with the help of other officers and a SWAT team. Detective Collins and his partner were positioned behind 2855 Utah as the SWAT team entered the building from the front. Detective Collins observed "a black male with a short afro with no shirt toss a dark object out of the window." Detective Collins recognized the man as Turner, and the dark object turned out to be a gun. Officers also found a syringe near the gun.

Inside, officers found Turner alone. In Turner's bedroom, officers found digital scales, a razor, a box of sandwich bags, and a plate holding prescription pills and hypodermic needles. Testing of a digital scale revealed trace amounts of heroin and cocaine. In the basement, officers found .40 caliber ammunition that matched the .40 caliber gun found in the yard.

## III. Procedural History

The State charged Turner with felony unlawful possession of a firearm, under Section 571.070,[3] and misdemeanor possession of drug paraphernalia with intent to use, under Section

---

[3] All statutory references are to RSMo (2000).

4

195.233. Before trial, Turner filed a motion to suppress all evidence obtained from the execution of the search warrant. Turner also requested a Franks[4] hearing on the basis that Detective Collins's affidavit misrepresented three major factual statements to Judge Clark. Turner, as required when requesting a Franks hearing, submitted an offer of proof in the form of Detective Collins's pretrial deposition.

The trial court held oral argument on whether to grant the Franks hearing. During argument, Turner maintained that Detective Collins misrepresented three statements in his affidavit. First, Turner contended that the affidavit said Detective Nikolov "conducted" a buy/walk operation in which Turner sold drugs to the CI, when in fact Detective Nikolov did not actually observe Turner selling drugs. Turner argues that the affidavit was misleading because there appeared to be more direct evidence of a drug sale than actually existed when Officer Nikolov conducted his buy/walk operation. Second, Turner argued that Detective Collins's affidavit omitted the fact that the CI involved was "working off a case,"[5] which might have impacted the issuing judge's probable cause determination. Third, Turner argued that, during Detective Collins's surveillance of 2855 Utah, the detectives did not have a view of the license plate of the tan vehicle nor could they see Turner's hands during the purported drug transaction because it was dark outside. Turner posits that the failure to address the lighting conditions in the affidavit likely influenced the issuing judge's probable-cause determination. Turner contends

---

[4] Franks v. Delaware, 438 U.S. 154 (1978). The Supreme Court in Franks explained the procedure for allowing hearings to provide a limited way for a criminal defendant to challenge the veracity of a sworn statement submitted by police in support of a search warrant application. Id. at 155–56.

[5] "Working off a case" is when a police suspect gives police information and, if that information leads to an arrest of another person, the person who supplied the information gets leniency on their own charge.

5

that he made a substantial preliminary showing of intentional or reckless material omissions to warrant a Franks hearing. The court denied Turner's request for a Franks hearing.

The court then conducted oral argument on the motion to suppress evidence. Turner argued that the affidavit lacked sufficient information to establish probable cause for the search warrant. Specifically, Turner emphazied that the affidavit did not indicate the past reliability of Detective Collins's CI, that Detective Nikolov's hearsay statement about the buy/walk operation was not based on personal knowledge, and that Detective Collins's surveillance did not confirm that drugs or money exchanged hands during the purported hand-to-hand transaction. The trial court also denied the motion to suppress.

Following oral argument, the trial court allowed Turner to submit the offer of proof he would have offered had the trial court granted his motion for a Franks hearing. Detective Collins testified in the offer of proof. Detective Collins testified that he did not believe that the statement in his affidavit about Detective Nikolov's buy/walk operation to purchase heroin from "ST" was misleading. Detective Collins admitted that he did not see anything in Turner's hands or in the hands of the person in the car, on the night of his surveillance of 2855 Utah, but explained that it is very common for people to stop in the middle of the street in front of a house to conduct a drug transaction. Finally, Detective Collins admitted that he omitted information from the affidavit about the CI "working off a case." Detective Collins testified that he did not include that information in the affidavit because it had "nothing to do with [his] internal investigation."

After the offer of proof, the case was tried to a jury. The jury found Turner guilty of both unlawful possession of a firearm and possession of drug paraphernalia with intent to use. After trial, Turner filed a motion for new trial, assigning error, *inter alia,* to the trial court's denial of

6

his request for a Franks hearing and its denial of his motion to suppress. The trial court denied the motion for new trial. The trial court sentenced Turner to six years in prison on Count I and 180 days on Count II, to run concurrently. This appeal follows.

## Points on Appeal

Turner raises two points on appeal. First, Turner contends that the trial court erred in denying Turner's request for a Franks hearing. Turner avers that he made a substantial preliminary showing that Officer Collins intentionally or recklessly made misleading omissions from his affidavit in support of his search warrant application and that those omissions would have precluded any finding of probable cause. Second, Turner contends that the trial court erred in denying his motion to suppress the evidence seized from 2855 Utah because that evidence was the fruit of an illegal search. Turner argues that the information contained within Detective Collins's affidavit does not support probable cause and that the search warrant violated Turner's right to be free from unreasonable searches and seizures.

## Discussion

### I. Point One—Denial of a Franks Hearing

Turner argues that the trial court erred in denying him a Franks hearing because Detective Collins omitted three material facts that, if added to the search warrant application, would negate probable cause. We disagree.

#### A. Preservation of Error and Standard of Review

To attack the validity of a search and the admissibility of the fruits of that search on appeal, a defendant must have filed a motion to suppress evidence before trial. Section 542.296.3. The defendant must keep the issue alive by asserting timely and proper objections throughout trial, and by raising the issue in the motion for new trial. State v. Anderson, 698 S.W.2d 849, 851 (Mo. banc 1985). Ultimately, the request for a Franks hearing is an attempt to

7

challenge a search and exclude the admissibility of the fruits of that search. See Franks, 438 U.S. at 156. In his motion to suppress, Turner requested a Franks hearing in an attempt to exclude all evidence seized after police executed the search warrant, and any testimony relating to that evidence. At trial, Turner objected to each piece of physical evidence obtained through the search of 2855 Utah.[6] After trial, Turner raised the Franks issue in his motion for new trial. Therefore, Turner preserved Point One for appeal.

The issue of which standard of review to apply to a denial of a Franks hearing is unresolved. We find no Missouri case defining the standard of review of a trial court's denial of a Franks hearing. Looking to federal cases provides little relief, as the circuits appear split between three standards: clear-error review,[7] de novo review,[8] and abuse of discretion.[9] In the past, we have relied on the Eighth Circuit for guidance in interpreting Franks issues. See State v. Miller, 815 S.W.2d 28, 33 (Mo. App. E.D. 1991) (citing United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987)); State v. Weide, 812 S.W.2d 866, 870 (Mo. App. W.D. 1991) (citing

---

[6] The State argues that Turner waived both points on appeal. The State concedes that, with respect to each point on appeal, Turner objected to the physical exhibits and photographs that were the subject of his motion to suppress. However, the State argues that Turner did not object to the testimony about that evidence. Turner argues in his brief that the "handgun, syringe, and other evidence were obtained as a direct result of an illegal search and therefore should have been suppressed as the fruit of the poisonous tree." Turner argues that the *physical evidence* should have been excluded by the trial court. Objections to the physical evidence, such as the handgun and syringe, were timely when Turner waited to object until the State offered to admit the evidence. See State v. Bates, 464 S.W.3d 257, 265 (Mo. App. E.D. 2015) (to preserve a claimed error for review, the defendant must make the objection when the evidence is "offered" at trial).

[7] See, e.g., United States v. Skinner, 972 F.2d 171, 177 (7th Cir. 1992), United States v. Hadfield, 918 F.2d 987, 992 (1st Cir. 1990); United States v. One Parcel of Prop. Located at 15 Black Ledge Drive, 897 F.2d 97, 100 (2d Cir. 1990).

[8] See, e.g., United States v. Homick, 964 F.2d 899, 904 (9th Cir. 1992); United States v. Mueller, 902 F.2d 336, 341 (5th Cir. 1990).

[9] See, e.g., United States v. Fairchild, 122 F.3d 605, 610 (8th Cir. 1997). See also, 73 A.L.R.6th 49 at § 3 nn.25–27 (providing a general overview of the circuit split).

United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986)). We adopt and follow the abuse of discretion standard used by the Eighth Circuit when reviewing a trial court's denial of Franks hearings. United States v. Kattaria, 553 F.3d 1171, 1177 (8th Cir. 2009) (en banc). When applying the abuse of discretion standard, a reviewing court must determine whether the trial court's ruling "offended the logic of the circumstances or was arbitrary and unreasonable." State v. Moore, 411 S.W.3d 848, 852 (Mo. App. E.D. 2013). We will find an abuse of discretion only when reasonable persons could not differ as to the propriety of the action taken. Id.

B.    Franks Doctrine

There is a presumption of validity with respect to affidavits supporting search warrants. Franks, 438 U.S. at 171. However, the Supreme Court in Franks established a limited exception to challenge the truthfulness of the statements asserted in such affidavits. Id. at 167; Long v. State, 441 S.W.3d 154, 158 (Mo. App. E.D. 2014). If the exception applies, the trial court must hold an evidentiary hearing to determine whether to strike the false language from the affidavit. Franks, 438 U.S. at 171–72.

To mandate an evidentiary hearing, the defendant must first make a "substantial preliminary showing" of deliberate falsehood (a lie) or reckless disregard for the truth on the officer's part in the warrant affidavit. Id. at 155–56. The allegations must be accompanied by an offer of proof, specify the portion of the warrant claimed to be false, be more than conclusory, and be supported by more than a desire to cross-examine. Id. at 171. Allegations of negligence or innocent mistake are *not* sufficient to mandate a Franks hearing. Id. If the substantial preliminary showing is met, the court considers the affidavit without the challenged statements and then determines whether sufficient content remains in the affidavit to support probable cause. Id. at 171–72. If probable cause remains, no hearing is required. Id. If the remaining content is insufficient to establish probable cause, a hearing is required. Id. at 172. If a hearing

9

is granted, the defendant then must prove the deliberate falsehood or reckless disregard for the truth by a preponderance of the evidence. United States v. Bausby, 720 F.3d 652, 657 (8th Cir. 2013).

While Franks dealt with express misrepresentations in warrant-application affidavits, the same analysis has been applied to material *omissions* of fact. State v. Weide, 812 S.W.2d 866, 870 (Mo. App. W.D. 1991). To challenge material omissions, the defendant must show that (1) the police omitted facts with the intent to make, or in reckless disregard of whether they made, the affidavit misleading, and (2) if the affidavit was supplemented with the omitted facts, no probable cause would exist. Id.

C.     Turner did not make the substantial preliminary showing of material omissions required to mandate a Franks hearing.

Turner claims that he made a substantial preliminary showing of material omissions made with deliberate falsity or reckless disregard of the truth. Turner cites three specific omissions, which will be discussed in turn.

1.     Omission One—References to Detective Nikolov's Operation

Detective Collins's affidavit stated that Detective Nikolov "conducted a buy/walk operation" using Detective Nikolov's CI. The affidavit omitted the fact that Detective Nikolov did not actually see Turner sell his CI drugs. By using the word "conducted," Turner argues that Detective Collins presented Detective Nikolov as a corroborating witness to the drug transaction. Turner argues that Detective Collins's pretrial deposition—which Turner submitted as his offer of proof in support of his request for a Franks hearing—establishes this reckless disregard for the truth. In Detective Collins's deposition, the detective testified that Detective Nikolov applied for a search warrant, but was denied because Detective Nikolov did not observe Turner during the

10

buy/walk operation.[10] Turner contends Detective Collins's belief that a search warrant did not issue on Detective Nikilov's operations, and the omission of that belief from his affidavit, evidences Detective Collins's intent to strengthen the affidavit for purposes of establishing probable cause.

We are not persuaded that omitting the fact that Detective Nikolov did not actually *see* Turner sell drugs during the buy/walk operation rises to a reckless disregard of the truth. The affidavit states, "Detective Nikilov [sic] conducted a buy/walk operation utilizing an informant, wherein a quantity of heroin was purchased from 'ST,' who was later identified as Shon Turner." In this statement, Detective Collins used the word "conducted." "Conducted" is not synonymous with "saw." The affidavit did not address the precise question of whether Detective Nikolov "saw" Turner sell drugs to the CI. Affidavits are not to be read in a hypertechnical manner, but in a commonsense manner. Illinois v. Gates, 462 U.S. 213, 236 (1983); State v. Vega, 875 S.W.2d 216, 218 (Mo. App. E.D. 1994). The issuing magistrate or judge understands that a police officer—not a lawyer—wrote the affidavit in the haste of an investigation. Gates, 462 U.S. at 235. While more detail in the affidavit regarding the buy/walk operation may have been beneficial, we do not find that the use of the word "conducted" in the affidavit implied or suggested that Detective Nikolov "saw" Turner selling the drugs.[11] There is no substantial preliminary showing that Detective Collins intentionally or recklessly used the term "conducted" rather than "saw" as a means to buttress a finding of probable cause in the affidavit.

---

[10] Detective Collins's belief was wrong because Detective Nikolov, in reality, did not apply for a search warrant.

[11] "Conducted," hastily written by a non-lawyer during an investigation, seems to be a quick way to describe the operation as a whole, rather than *how* the operation was conducted. This language suggests it is entirely possible, maybe probable, that the transaction occurred inside a house, a car, or otherwise obscured from officers.

11

Turner also claims that Detective Collin's failure to state that Officer Nikolov applied for, but did not obtain a search warrant constitutes a material omission made with reckless disregard for the truth. At Detective Collins's pretrial deposition, Detective Collins testified, "I believe, it was Judge Clark, at the time, didn't sign the search warrant for—I don't know what reason." Later in the deposition, Detective Collins testified:

> I can't remember the particulars of [Detective Nikolov's] initial investigation, because ... we were on separate squads. We work together now, but if I recall correctly, it was some technicality, where during their buy walk, they didn't observe ... the defendant come out of the house, to do the deal. I can't—like I said, I can't recall the particulars. I wasn't there.

Detective Collins admits that he did not know the particulars of Nikolov's investigation. Rather than swear to uncertainties regarding Nikolov's application for a search warrant, Detective Collins did not include the information in the affidavit. Notably, Detective Collins did not rely *solely* on Detective Nikolov's investigation to establish probable cause. Detective Collins had corroboration; he was *not* simply re-submitting Detective Nikolov's investigation with the intent to get a second chance at establishing probable cause. Further, Detective Collins was wrong about Detective Nikolov's search warrant application: Detective Nikolov never applied for a search warrant. Turner's argument fails because were we to supplement the affidavit with the alleged omitted information under the Weide framework, the affidavit would contain *false information*. This false information would have misled the judge as to the actual facts more than the omission. Given the record before us, we are not persuaded that Turner made the required substantial preliminary showing that Detective Collins omitted facts with the intent to make, or reckless disregard of making the affidavit misleading.

## 2. Omission Two—Status of Confidential Informant

Failure to advise the court of payments or promises of leniency to an affiant does not constitute a material omission of fact sufficient to defeat a search warrant. Weide, 812 S.W.2d at

12

871. We apply the same logic to facts demonstrating that a CI is "working off a case." As the trial court stated when denying the Franks hearing: "most CIs I've ever encountered, and I've sworn several of them in, they're either getting paid or they're working off a case. So I think that the magistrate … is already going to take that into consideration." Omitting the fact that the CI here was "working off a case" does not show an intent to make, or reckless disregard of whether the omissions made, the affidavit misleading.

### 3.    Omission Three—Lighting Conditions

Detective Collins's affidavit stated: "I observed Shon Turner walk down the steps, approach the passenger side of the tan vehicle and conduct what we believed to be a hand to hand transaction for illegal narcotics." Turner posits that the affidavit was misleading because Detective Collins omitted the fact that it was too dark for him to see the buyer's license plate, any drugs, or any money exchange hands.

We reject the argument that Detective Collin's failure to describe the lighting conditions indicates that he acted either intentionally or in reckless disregard of whether the omission of that fact would render the affidavit misleading. Detective Collins had six years of experience on the police force. Detective Collins stated in the affidavit that he "believed" he was witnessing a hand-to-hand drug transaction. Detective Collins was surveilling a suspected drug dealer at night, not an unusual occurrence. Turner came out to the middle of the street and had a brief interaction with someone driving a car. Turner acted suspicious as he "cautiously looked around as if he were attempting to detect law enforcement." In Detective Collins's pretrial deposition, Turner asked the detective why he believed it was a drug transaction. Detective Collins responded that he saw Turner:

> [W]alk up to, I believe, it was the passenger side of the vehicle, kind of reach in, do what we believed to be a quick hand-to-hand transaction, which is really common for someone who's selling drugs to exit a house or meet with somebody

13

in the car, go up to the vehicle, do the hand-to-hand transaction, and immediately walk away. And the drive—the person in the vehicle immediately drive off.

Detective Collins's affidavit did *not* claim that he definitively saw a hand-to-hand transaction. Detective Collins said he "believed" he saw a hand-to-hand transaction. This statement implies that Detective Collins did not actually see the drugs and money exchange hands; otherwise, he would *know* he saw a hand-to-hand transaction. Further, the affidavit stated that the purported transaction occurred during the "evening" of August 14, 2013, which suggests that it might have been dark outside. Nothing in Detective Collins's deposition suggests he intentionally or recklessly avoided talking about the darkness. Turner has not made a substantial preliminary showing that this portion of the affidavit is misleading in any intentional or reckless way.

Because Turner has not made a substantial preliminary showing indicating that any portion of Detective Collins's affidavit was intentionally misleading, or was so reckless as to possibly misleading, the trial court did not abuse its discretion in denying Turner's request for a Franks hearing. Point One is denied.

## II.     Point Two—Sufficient Probable Cause

Having resolved the issue of the Franks hearing, we turn now to whether the trial court clearly erred in denying Turner's motion to suppress. In his motion to suppress, Turner sought to exclude evidence as the fruit of an illegal search warrant he argues lacked probable cause.

### A.     Standard of Review

Missouri courts give "great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." State v. Neher, 213 S.W.3d 44, 49 (Mo. banc 2007). In reviewing probable cause, the reviewing court does not look beyond the four corners of the warrant application and supporting affidavits. Id. Because there is a strong

14

preference for searches conducted with a warrant, we "should not quash a warrant by construing it in a hypertechnical, rather than a commonsense, manner." Id. Our duty is only to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed for the search. Id. We will reverse a finding of probable cause only if the *issuing* magistrate or judge clearly erred in determining, based on the totality of the circumstances, that probable cause existed. Id.

B.    The issuing judge had a substantial basis to find probable cause.

Turner challenges the search warrant under both the Missouri Constitution and the United States Constitution. Article I, section 15 of the Missouri Constitution and the Fourth Amendment to the United States Constitution provide the same guarantees, so the same analysis applies to each provision. State v. Oliver, 293 S.W.3d 437, 442 (Mo. banc 2009). The Fourth Amendment states that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause is determined by a totality of the circumstances test. Gates, 462 U.S. at 230–31. The magistrate must simply make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." State v. Moiser, 738 S.W.2d 549, 557 (Mo. App. E.D. 1987) (quoting Gates, 462 U.S. at 238). Probable cause is a flexible standard that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. State v. Hampton, 959 S.W.2d 444, 451 (Mo. banc 1997) (quoting Ornelas v. United States, 517 U.S. 690, 695 (1996)).

A search warrant affidavit may rely on hearsay. State v. Ambrosio, 632 S.W.2d 262, 265 (Mo. App. E.D. 1982). A hearsay declarant's veracity, reliability, and basis of knowledge are all relevant considerations. State v. Bowen, 927 S.W.2d 463, 465 (Mo. App. W.D. 1996). However, these considerations are only factors to be considered in the totality of the

15

circumstances; a deficiency in one can be compensated for by a strong showing of some other "indicia of reliability." Id. at 466. When hearsay forms the basis of probable cause for issuing a search warrant, there must be a substantial basis for crediting the hearsay. Ambrosio, 632 S.W.2d at 265. Hearsay provided by law enforcement officers and ordinary citizens with personal knowledge is "inherently reliable," so no independent showing of credibility is needed. State v. Baker, 103 S.W.3d 711, 720 (Mo. banc 2003). But, when an affidavit is based on the hearsay of an informant, personal knowledge of the informant is not enough. Ambrosio, 632 S.W.2d at 265. The informant's statements must also be corroborated through other sources. Id.; State v. Laws, 801 S.W.2d 68, 70 (Mo. banc 1990).

Numerous pieces of information provide a substantial basis to find probable cause under the totality of the circumtances. Detective Collins's CI supplied hearsay information about Turner's illegal activities. The CI described "ST" as a black male, dark complexion, medium build, approximately 5'8", 185 pounds, and in his mid-forties. This information was based on the CI's personal observation of Turner. The CI stated that Turner was selling heroin from a residence at 2855 Utah. The CI stated that he or she had been going to 2855 Utah to purchase heroin for approximately two months. The CI described the interior of the house, saying heroin was stored in Turner's bedroom and various other locations. The CI also described Turner's weapon inside the house, which was a semi-automatic handgun. The CI's information showed the CI had personal knowledge of both the drug transactions with Turner and the contraband within the house.

With no information about the CI's past reliability in the affidavit, these hearsay statements require corroboration to support a finding of probable cause. Detective Collins's computer inquiry revealed that Turner had an alias of "ST." An inquiry into the utilities at 2855

16

Utah revealed the name "M.Turner" with active service at the address. This fact, at least, suggests that a family member of Turner's lived at the house. Detective Collins also learned that Detective Nikolov had done a buy/walk operation at 2855 Utah. Detective Nikolov utilized a CI to perform that buy/walk operation. Detective Nikolov's CI purchased a quantity of heroin from "ST." This "ST" nickname was consistent with Detective Collins's computer inquiry and his own CI's description. The purchase of heroin from 2855 Utah corroborates Detective Collins's CI's report of contraband in the building. When hearsay reports in an affidavit come from multiple sources independent of each other, and the reports tend to establish the same facts, it is reasonable to find each independent source credible. See Baker, 103 S.W.3d at 720–21 (separate reports from ordinary citizens and police officers tended to establish the same facts, which suggests both sources were credible). In Baker, the separate reports came from ordinary citizens and police officers, both of whom are "inherently reliable" sources. Id. at 720–21. Here, the sources of information provide somewhat less corroboration than Baker because informants are not "inherently reliable." Nevertheless, two independent sources—whether informants or otherwise—that tend to establish the same facts provide some degree of corroboration to each other.

Detective Collins's independent surveillance further corroborated his suspicion that Turner was dealing drugs and storing contraband at 2855 Utah. On August 14, 2013, Detective Collins observed Turner exit 2855 Utah and stand on the front steps of the residence. After a few minutes, a car stopped in the middle of the street. Turner approached the vehicle, had a short encounter with the driver, cautiously looked around as if he were attempting to detect law enforcement, and then ran back inside. Given his six years of experience, Detective Collins

17

believed this was a hand-to-hand drug transaction. Based on these facts, the issuing judge reasonably could have believed there was a fair probability that a drug transaction took place.

The issuing judge was also entitled to rely on Detective Collins's personal knowledge of Turner's past criminal convictions. See Neher, 213 S.W.3d at 50–51 (stating that the issuing judge had a right to rely upon the sheriff's personal knowledge of a suspect's "extensive criminal history involving drugs" when determining probable cause). According to his affidavit, Detective Collins inquired into Turner's criminal history with a computer search. The search revealed that Turner had a history of arrests for drug and weapons violations, including "numerous felony convictions." These drug and weapons violations are consistent with a drug dealer's activities. Thus, Turner's criminal history corroborated the other information.

The final piece of information in the affidavit was Detective Collins's CI's report that the CI had been in the house within twenty-four hours of the warrant application. The CI personally observed Turner in the possession of heroin packaged for sale. The informant also said Turner was in possession of a handgun. The freshness of the information supports a finding of probable cause. Neher, 213 S.W.3d at 50.

In summary, two independent sources provided information that tended to establish that drugs were inside 2855 Utah: Detective Nikolov, through a CI, conducted a buy/walk operation at 2855 Utah, and Detective Collins obtained information from his CI that Turner was selling drugs out of 2855 Utah. Next, Detective Collins's surveillance of 2855 Utah tended to corroborate the fact that Turner was dealing drugs from 2855 Utah because Turner's behavior was suspicious and consistent with a hand-to-hand drug transaction. Turner's history of weapons-and drug-related arrests was also a valid consideration. Finally, Detective Collins's CI provided fresh information that contraband had been inside 2855 Utah within the past twenty-

18

four hours. The information provided a substantial basis to find probable cause because there was a fair probability that contraband would be found inside 2855 Utah. Thus, the issuing judge did not clearly err when he signed the search warrant, and the trial court did not err in denying Turner's motion to suppress evidence. Point Two is denied.

<u>Conclusion</u>

The decision of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

19