**Kenneth Leonard O'ROURKE, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. ED 98949.

Missouri Court of Appeals, Eastern District, Division One.

June 25, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2013.

Application for Transfer Denied Oct. 29, 2013.

---

Robert S. Adler, Clayton, MO, for Respondent.

Rachel M. Jones, Jefferson City, MO, for Appellant.

SHERRI B. SULLIVAN, J.

### Introduction

The Director of Revenue (Director) appeals from the judgment of the trial court reinstating the driving privileges of Kenneth Leonard O'Rourke (O'Rourke). We affirm.

### Factual and Procedural Background

Following an August 27, 2011 arrest for suspicion of driving while intoxicated (DWI), Director suspended O'Rourke's driving privileges. O'Rourke requested an administrative hearing, at which Director prevailed. O'Rourke then filed a petition for a trial de novo in the circuit court to review the suspension.

The trial de novo was conducted on June 18, 2012. At the hearing, Director offered as evidence Exhibit A, consisting of arresting Officer Rodman's Alcohol Influence Report and narrative statement, O'Rourke's breath test result, and a maintenance report for the breathalyzer, the Intoxilyzer 5000. Director also offered into evidence Exhibit B, which included an amended maintenance report for the breathalyzer. O'Rourke objected to the admission of the maintenance report and breath test results, contending the amended maintenance report did not comply with the rules and regulations of the Missouri Department of Health and Senior Services (DHSS). The trial court overruled O'Rourke's objection and Exhibits A and B were admitted into evidence.

Director did not introduce any other evidence and submitted its case on its records. Officer Rodman's narrative indicates he transported O'Rourke to the police station after arresting him for DWI. At the station, O'Rourke submitted to a chemical test of his breath. The narrative indicates Officer Rodman continually observed O'Rourke from 12:09 a.m. until the test was administered 21 minutes later at 12:30 a.m. The breath test result showed a blood alcohol content (BAC) of. 172 percent.

With respect to the administration of the breath test, O'Rourke testified at trial that he blew into the breathalyzer three times. O'Rourke testified:

A. The first time I blew into the machine [Officer Rodman] said it didn't register ... I sat there, he pushed a couple buttons, and he said try it again ... He said it didn't register again ... So I sat there and I started to take the breathalyzer tip out of my mouth thinking something was wrong. He said, 'Don't take that out of your mouth.' So I put it back in, he pushed a few more buttons, and I blew again, and he said that time it registered.

. . .

Q. Okay. So how long would you say that entire process took?

A. Under ten minutes for sure, because I had the breathalyzer thing in my mouth. So I know it wasn't much longer than ten minutes.

O'Rourke testified Officer Rodman did not conduct another observation period or change the mouthpiece between his blows into the machine. O'Rourke stated he did not know if the breathalyzer printed a ticket after any of the blows.

During closing arguments, O'Rourke challenged the accuracy of the breath test result, arguing the procedure employed by Officer Rodman in administering the test, specifically having the driver blow into the machine three times within ten minutes without changing the mouthpiece, did not comply with DHSS rules and regulations. Director argued the observation period was sufficient and the Code of State Regulations (C.S.R.) does not require the mouthpiece to be changed in between blows. Director requested findings of fact and conclusions of law regarding any reason the court would have for excluding the breath test result.

On July 23, 2012, the trial court entered its judgment in which it indicated the evidence adduced included Director's Exhibit A. The court found Officer Rodman had probable cause to arrest O'Rourke for DWI but that O'Rourke did not have a BAC of .08 percent or more by weight. The court found "[t]he BAC result is not admitted for the reason that [O'Rourke] introduced three breath samples without the mouthpiece being changed, without the officer doing a new 15 minutes observation." The trial court ordered Director to remove O'Rourke's administrative suspension and to reinstate his driving privileges. Director appeals.

### Points Relied On

In his first point, Director argues the trial court erred in reinstating O'Rourke's driving privileges because the court erroneously declared and applied the law, in that DHSS regulations do not require the officer operating a breath test instrument to change the mouthpiece on the instrument or to conduct an additional 15–minute observation period between breath tests or between a driver's attempts to blow into the breath test instrument.

In his second point, Director argues the trial court erred in reinstating O'Rourke's driving privileges because the judgment was against the weight of the evidence and was not supported by substantial evidence, in that O'Rourke did not produce any evidence to rebut the statutory presumption that he was driving with a BAC over the legal limit, which arose under Section 577.037 [1] when O'Rourke's breath test result showing he had a BAC over the legal limit was admitted into evidence.

### Standard of Review

Following an adverse judgment from the Department of Revenue, a driver may petition for a trial *de novo* in the circuit court. Section 302.535.1. On appeal from the trial court's judgment, this Court will affirm the decision of the trial court if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Irwin v. Dir. of Revenue*, 365 S.W.3d 266, 268 (Mo.App. E.D. 2012). Declarations of law are reviewed *de novo*. *Id.* The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the judgment and all contrary evidence and inferences are disregarded. *Dillon v. Dir. of Reve-*

---

1. All statutory references are to RSMo 2006, unless otherwise indicated.

*nue, State of Mo.*, 999 S.W.2d 319, 321–22 (Mo.App. W.D.1999). We defer to the trial court's credibility determinations. *Walker v. Dir. of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004).

### Discussion

To establish a *prima facie* case for suspension of a driver's license, Director must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent. Section 302.505.1; *Irwin*, 365 S.W.3d at 268. Director has the burden of establishing grounds for the revocation by a preponderance of the evidence. Section 302.535.1; *Irwin*, 365 S.W.3d at 268.

Director may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit. *Irwin*, 365 S.W.3d at 268–69. To establish a *prima facie* foundation for admission of breathalyzer test results, Director must demonstrate the test was performed: (1) by following the approved techniques and methods of DHSS; (2) by an operator holding a valid permit; (3) on equipment and devices approved by DHSS. *Id.* at 269. The regulations that must be followed to satisfy the foundational requirements are set forth in 19 C.S.R. 25–30. *Hill v. Dir. of Revenue State of Mo.*, 985 S.W.2d 824, 827 (Mo.App. W.D.1998).

Section 19 C.S.R. 25–30.060 establishes the operational checklist for the approved breath analyzers and states the operator of a breath analyzer machine must complete an operational checklist for each test at the time the test is given. 19 C.S.R. 25–30.060. The operator of the machine is required to conduct a 15–minute observation period prior to obtaining a breath sample, during which time the operator shall reasonably ensure that the test subject does not smoke, vomit, or have any oral intake. 19 C.S.R 25–30.060(7), 25–30.011(2)(H). Oral intake is defined as the act of placing a substance from outside the body into the mouth; however, the breathalyzer mouthpiece is specially excluded from the definition. 19 C.S.R. 25–30.011(2)(I). The 15–minute observation period is intended to ensure that any alcohol in a test subject's mouth has time to dissipate before a breath sample is taken so that mouth alcohol does not affect the accuracy of a test result. 19 C.S.R. 25–30.060(7); *Hill*, 985 S.W.2d at 828.

Although the trial court's order states the BAC result was "not admitted" because Officer Rodman did not change the mouthpiece or conduct a new 15–minute observation period between breath samples, the record indicates the court had previously admitted the BAC result into evidence along with the rest of Director's exhibits over O'Rourke's foundational objection. Director asserts, and this Court agrees, that the trial court's statement reflects a finding as to the credibility and weight to be given the breath test result rather than its admissibility. Such a reading is also consistent with the trial court's statement in the judgment that Director's Exhibit A was included in the evidence admitted at trial.

■ Furthermore, the record shows Director established a *prima facie* foundation for admission of the breath test result. O'Rourke contends Director failed to establish an adequate foundation by failing to demonstrate the test was conducted pursuant to the approved techniques and methods of DHSS, in that the officer did not change the mouthpiece or conduct additional observation periods between blows into the instrument.

19 C.S.R. 25–30.060, however, speaks to only one 15–minute observation period and

this general provision has been interpreted as not requiring an additional observation period between subsequent breath tests in order for Director to establish the minimum foundational requirements for admission of the test results. *Hill*, 985 S.W.2d at 828–29 (finding the observation requirement is satisfied once a single 15–minute observation period is observed and an additional observation period of 15 minutes between subsequent tests is not required); and *Carr v. Dir. of Revenue*, 95 S.W.3d 121, 129 (Mo.App. W.D.2002) fn. 7 (reaffirming holding in *Hill*, finding once the initial 15–minute observation period is successfully completed, a second observation period is superfluous and unnecessary when the driver is requested to take a second breath analyzer test for "whatever reason").[2] In addition, 19 C.S.R. 25–30.060 generally does not require an officer to change the mouthpiece between tests. *Walker*, 137 S.W.3d at 447; *Quick v. Dir. of Revenue*, 937 S.W.2d 408, 410 (Mo.App. E.D.1997).[3]

Because the record shows the breathalyzer test was performed following the approved techniques and methods of DHSS by an operator holding a valid permit and using equipment approved by DHSS, the Director laid a proper foundation for the introduction of the breath test result and the evidence was properly admitted at trial.

### Points I and II

With this in mind, Director argues on appeal the trial court "erroneously declared and applied the law" in considering O'Rourke's argument that Officer Rodman's failure to change the mouthpiece or to conduct any additional 15–minute observation periods between blows into the instrument could affect the accuracy or validity of the breath test result. Director contends because these acts were not required by DHSS rules, O'Rourke's "legal argument [was rendered] irrelevant to the trial court's determination of whether the Director met his burden under Section 302.535"[4] and that "the trial court erred as a matter of law in considering it." Director's argument is without merit.

Director's position is that once he satisfies the *prima facie* foundational requirements for admission of the test results, those results are unassailable absent expert testimony presented by the driver that the events surrounding the procurement of the breath test result could affect the accuracy or validity of the results. Such an argument implicitly relies upon a presumption that the Director's evidence is

---

2. This is not to say that an additional observation period may never required under any circumstances to meet this burden, as DHSS operating procedures may mandate such depending on the particular facts of a case. For example, DHSS's Breath Alcohol Program Type III Operator Manual recommends that, in the event the Intoxilyzer 5000 displays the message "Invalid Sample" the operator should "Check mouth, wait an additional 15 minutes, try one or more tests." Type III Operator Manual—3–B: Intoxilyzer 5000, January 2013, page 10. Neither *Hill* nor *Carr* addressed such a provision.

3. This is a general statement as to the basic foundational requirements for admission of evidence based upon 19 C.S.R. 25–30.060, a broad provision which does not specifically set forth this requirement. As discussed above, however, this does not necessarily preclude a finding of such a requirement in the face of a more specific, relevant DHSS provision.

4. Section 302.535.1 provides: "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court. The burden of proof shall be on the state to adduce the evidence. Such trial shall be conducted pursuant to the Missouri rules of civil procedure and not as an appeal of an administrative decision pursuant to chapter 536, RSMo."

not only admissible but also is true and shifts the burden of proof to the driver. Following the Missouri Supreme Court's opinion *White v. Dir. of Revenue*, 321 S.W.3d 298 (Mo. banc 2010), such position is not supported by precedent.

In *White*, the Missouri Supreme Court overturned two decades of precedent misapplying the assignment of burden of proof found in Section 302.535. *White*, 321 S.W.3d at 305. *White* held Director's burden of proof has two components—the burden of production, meaning the duty to introduce evidence sufficient to submit the case to the factfinder, and the burden of persuasion, meaning the duty to convince the fact-finder to view the facts favorably to that party. *Id.* at 304–305. *White* specifically overruled prior cases to the extent those cases applied Section 302.535 "to create a presumption of validity of the director's evidence, to place a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the trial court to disbelieve the evidence on a contested issue, or to require written factual findings absent a request by a party[.]" *Id.* at 307.

To the extent Director's argument relies upon a presumption of the validity of his evidence and shifts the burden of proof to the driver pursuant to Section 302.535, Director's points on appeal are denied.

■ Director also argues the court's judgment was against the weight of the evidence and was not supported by substantial evidence because O'Rourke did not produce any evidence to rebut the presumption that he was driving with a BAC over the legal limit that arose under Section 577.037 when a breath test result showing he had a BAC over the legal limit was admitted into evidence.

Section 577.037 provides in relevant part:

1. Upon the trial of any person for violation of any of the provisions of section 565.024, RSMo, or section 565.060, RSMo, or section 577.010 or 577.012, or upon the trial of any criminal action or violations of county or municipal ordinances or in any license suspension or revocation proceeding pursuant to the provisions of chapter 302, RSMo, arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence and the provisions of subdivision (5) of section 491.060, RSMo, shall not prevent the admissibility or introduction of such evidence if otherwise admissible. *If there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.*

. . .

3. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was intoxicated.

4. *A chemical analysis of a person's breath, blood, saliva or urine, in order to give rise to the presumption or to have the effect provided for in subsection 1 of this section, shall have been performed as provided in sections 577.020 to 577.041 and in accordance with methods and standards*

*approved by the state department of health and senior services.*

(Emphasis added.)

Director contends upon admission into evidence of a driver's breath test result showing a BAC over the legal limit, a statutory presumption that the driver had a BAC over the legal limit arises under Section 577.037.[5] In *Collins v. Dir. of Revenue,* 399 S.W.3d 95 (Mo.App. W.D. 2013), the Western District of this Court recently rejected the argument that Section 577.037 creates such a presumption. We agree with the holding in *Collins,* and find Section 577.037 does not create a presumption of validity of breath test results once they are admitted into evidence, but rather provides an alternative means of proving the element of "intoxicated condition" of driving while intoxicated under Section 577.010.1. See *Collins,* 399 S.W.3d at 100–01.

Section 577.010 is a criminal statute for the offense of driving while intoxicated. To sustain a conviction under Section 577.010, the State must prove the defendant operated a motor vehicle while in an intoxicated or drugged condition. Section 577.010.1. It is not necessary for the State to prove the defendant had a BAC of .08 percent or higher. However, if the State has credible evidence of excessive BAC, the State may use the presumption in Section 577.037 to prove the necessary element of intoxicated condition. See *Collins,* 399 S.W.3d at 102. Thus, the presumption in Section 577.037 that a person with a BAC of at least .08 percent is intoxicated is relevant to the elements of the offense

of driving while intoxicated in Section 577.010.

In contrast, though, to support the revocation or suspension of a person's driver's license, the Director must establish that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent. Section 302.505.1; *Irwin,* 365 S.W.3d at 268. The Director may introduce evidence of a breathalyzer test to establish the driver's BAC exceeded the legal limit. *Irwin,* 365 S.W.3d at 268–69. The Director is not required to prove the driver was intoxicated, only that his BAC was over the legal limit, so the presumption of intoxication in Section 577.037 does not aid the Director in establishing a case for revocation or suspension under Section 302.505.1.

■ Director established a foundation for the admission of the breath test result; however, once admitted into evidence, the court was free to accept or reject it as with any other evidence presented at trial. *White,* 321 S.W.3d at 308 ("When evidence is contested by disputing a fact in any manner, . . . [a] trial court is free to disbelieve any, all, or none of that evidence[ ]"). O'Rourke contested the accuracy and validity of the breath test result by presenting evidence that Officer Rodman required O'Rourke to repeatedly blow into the machine while keeping the mouthpiece in his mouth. O'Rourke testified Officer Rodman twice stated "it didn't register" and had to repeatedly press buttons on the machine before getting a test result. Director did not call Officer Rodman to testi-

**5.** Citing *Coyle v. Dir. of Revenue,* 181 S.W.3d 62, 65–66 (Mo. banc 2005), Director argues that once the presumption arises, the effect is to shift the burden of production to the driver to produce rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results. *White,* 321 S.W.3d at 306, however, explicitly overturned

*Coyle's* holding regarding the shifting of the burden of production and Director's argument to the contrary is unavailing. See also *Harvey v. Dir. of Revenue,* 371 S.W.3d 824, 829 (Mo.App. W.D.2012) and *Hilkemeyer v. Dir. of Revenue,* 353 S.W.3d 62, 67 (Mo.App. S.D.2011).

fy, but relied exclusively on its records which simply indicated that a test had been given and provided few specifics as to how the test was conducted. The record is silent as to why the machine was "not registering" and what buttons Officer Rodman was pushing.

 The trial court admitted the breath test result into evidence but, as indicated in its written findings, found Director's evidence not to be credible in light of the evidence O'Rourke presented contesting Director's evidence. When the evidence is contested, this Court defers to the trial court's credibility determinations. *White,* 321 S.W.3d at 308. This court does not reweigh the evidence, but instead confines itself to determining whether substantial evidence exists to support the trial court's judgment, whether the judgment is against the weight of the evidence or whether the court erroneously declared or applied the law. *White,* 321 S.W.3d at 309.

Here, the Director made a *prima facie* case but O'Rourke contested the validity of the Director's evidence. No presumption arose that the Director's evidence was true and the burden of proof never shifted to O'Rourke. After evaluating the evidence, the court found O'Rourke's evidence to be credible. The trial court's judgment is supported by substantial evidence in the record and was not against the weight of the evidence.

Based on the foregoing, Director's Points I and II are denied.

### Conclusion

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.