Jennifer **JOHNSON, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE of Missouri, Respondent–Appellant.**

No. SD 32408.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 2013.

---

Rachel M. Jones of Jefferson City, MO, attorney for appellant.

Kyle E. Walsh and John M. Albright of Poplar Bluff, MO, attorney for respondent.

JEFFREY W. BATES, P.J.

The Director of Revenue (Director) appeals from a judgment reinstating the driving privileges of Jennifer Johnson (Johnson).[1] We affirm.

## I. Factual and Procedural Background

On December 13, 2011, Johnson was arrested on suspicion of driving while intoxicated (DWI) by Officer D. Mustain of the Poplar Bluff Police Department. Johnson was transported to the police station and agreed to provide a breath sample. After observing her for 15 minutes to ensure that no smoking or oral intake of any material occurred, Officer Mustain administered a breath test on the Intoxilyzer 5000. At 9:19 p.m., the breath test instrument printed an evidence ticket stating "invalid sample." Five minutes later, at 9:24 p.m., the officer administered a sec-

ond breath test on the same instrument, which reported a result of .209% as Johnson's blood alcohol content (BAC).

The Director administratively suspended Johnson's driving privileges. Pursuant to § 302.535, Johnson filed a petition for trial *de novo* in the circuit court.[2]

On September 7, 2012, the trial *de novo* was held. The Director's evidence consisted solely of Exhibit A, which was a package of certified records from the Department of Revenue (DOR). These records included, *inter alia*, Officer Mustain's incident report, the alcohol influence report and the breath test results. Johnson's counsel objected to the admission of the .209% BAC test result because the second test was administered only five minutes after the first test. Counsel argued that Officer Mustain should have waited at least 15 minutes before administering the second breath test:

> [JOHNSON'S COUNSEL]: [M]y objection is just to introduction of the subject test because the Intoxilyzer manual specifically states you need to wait 15— some manuals say 20—minutes in between tests, because the slope detector goes off if there's the presence of mouth alcohol. That's why an invalid sample comes in, not because of failure to blow properly or anything like that.
>
> THE COURT: Response?
>
> [DIRECTOR'S COUNSEL]: Judge, that has been a contention, but it's my understanding that case law is—and further, that Missouri Department of Health rules and regulations in that regard do not require an additional 15–

---

1. The caption of the judgment identified the petitioner as "Jennifer Bruce." The Director's notice of appeal, however, identified her as Jennifer Johnson. Respondent's brief likewise identified petitioner using that last name. Therefore, we have corrected our caption to so reflect.

2. All references to statutes are to RSMo Cum. Supp. (2011) unless otherwise indicated. All references to rules are to Missouri Court Rules (2013).

minute observation period in that circumstance where an invalid sample reading has been had on the device.

And I would ask the Court to permit the parties leave to file a letter brief in this regard on that particular issue.

The court stated that it would "take this matter under advisement until October the 2nd, pending receipt of the letters and any evidentiary documents you want to submit as with regard to the Department of Health regulations or the Intoxilyzer."

On September 17th, Johnson's counsel filed correspondence to the trial judge stating, in relevant part, as follows:

Please find enclosed with this letter a copy of *Martin v. Director of Revenue*. In this case, it was held that the evidence was sufficient to support a finding that a second alcohol breath test was unreliable. In the case attached, it states there was only a three (3) to six (6) minute waiting period between the tests after an invalid sample. In our case, there was only a five (5) minute waiting period between the first sample which came back invalid, and the second sample, which came back .209. Granted, we did not present expert testimony however, we did instruct the Court that the manual for the Intoxilyzer 5000 states there should be a 15 minute waiting period between a test that registers invalid and any subsequent breath alcohol test. I also argued to the Court that an invalid sample means mouth alcohol and that a 15 minute waiting period is required for a reliable BAC.

The Director did not submit a brief or any additional evidentiary materials to the trial court.

On October 2, 2012, the trial court issued its judgment reinstating Johnson's driving privileges. In relevant part, the judgment stated:

After presentation of evidence, the Court finds that the Petitioner's first BAC read-out was unreliable and not credible as it read "invalid sample". The second sample was taken within five (5) minutes of the invalid sample. The Court finds that the officer conducting said breath test did not follow the Department of Health's regulations nor Intoxilyzer 5000 User Manual.

This appeal followed.

## II. Standard of Review

A person whose driving privileges are suspended or revoked by the DOR decision may file a petition for a trial *de novo* in circuit court. § 302.535.1. We review the trial court's judgment in a § 302.535 license suspension or revocation case like any other court-tried civil case. *See White v. Director of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 307–08; *see also* Rule 84.13(d); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When evidence is contested by disputing a fact in any manner, an appellate court defers to the trial court's determination of credibility. *See White*, 321 S.W.3d at 308; *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); Rule 84.13(d)(2). "A trial court is free to disbelieve any, all, or none of that evidence." *White*, 321 S.W.3d at 308. When the facts are not contested and the issue is one of law, our review is *de novo*, and no deference is given to the trial court's determination. *Id.* at 308–09; *Hinnah*, 77 S.W.3d at 620.

## III. Discussion and Decision

The Director contends the trial court erred by reinstating Johnson's driving

privileges because: (1) the court's decision resulted from an erroneous application or declaration of the law; and (2) the judgment is not supported by any evidence. We find no merit in either argument.

In order to suspend Johnson's license, the burden was upon the Director to prove by a preponderance of the evidence that: (1) Johnson was arrested on probable cause for violating an alcohol-related offense; and (2) Johnson's BAC exceeded the legal limit of .08 percent. *See White,* 321 S.W.3d at 309 n. 11; § 302.505.1; § 302.535.1. Thus, the Director bore the burden of proving that Johnson's BAC exceeded the legal limit of .08%. According to Exhibit A, the first breath test on the Intoxilyzer 5000 produced an evidentiary ticket stating "invalid sample." Officer Mustain was not called as a witness, and nothing in Exhibit A explained what "invalid sample" meant. Johnson's counsel argued that: (1) "invalid sample" meant mouth alcohol was present; and (2) the Intoxilyzer 5000 manual required a second 15–minute waiting period to be observed before performing another test. Because that did not occur, Johnson's counsel argued that the second .209% BAC result was unreliable. While the second result may have been admissible pursuant to § 302.312.1 RSMo (2000), the trial court was not required to believe it. *See, e.g.,*

*Tweedy v. Director of Revenue,* 412 S.W.3d 389, 395–96, 2013 WL 4715669, \*4 (Mo. App.E.D. filed September 3, 2013). The trial court kept the record open so the Director could submit the Intoxilyzer 5000 manual as evidence, but the Director did not do so. Therefore, the trial court could reasonably infer that the manual would have been unfavorable to the Director. *See, e.g., Rohner v. Bi–State Development Agency,* 728 S.W.2d 626, 628–29 (Mo.App. 1987) (hospital's failure to produce a relevant portion of its procedure manual permitted plaintiffs to argue an adverse inference in closing arguments). Because Johnson contested the reliability of the second breath test result and the trial court decided that factual issue adversely to the Director, we defer to the trial court's determination. *See White,* 321 S.W.3d at 308; *O'Rourke v. Director of Revenue,* 409 S.W.3d 443, 448–50 (Mo.App. E.D.2013).

The Director, however, argues that the trial court's judgment resulted from an erroneous declaration or application of the law because Officer Mustain was not required to observe Johnson for another 15 minutes before performing the second breath test with the Intoxilyzer 5000. To support this argument, the Director cites cases and regulations addressing the foundational requirements for the admission of a breathalyzer test result into evidence.[3]

3. The Director may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit. *Irwin v. Dir. of Revenue,* 365 S.W.3d 266, 268–69 (Mo.App. 2012). To establish a *prima facie* foundation for admission of breathalyzer test results, the Director must demonstrate the test was performed: (1) by following the approved techniques and methods of the Missouri Department of Health and Senior Services (DHSS); (2) by an operator holding a valid permit; and (3) on equipment and devices approved by DHSS. *Id.* at 269; *see White v. Director of Revenue,* 227 S.W.3d 532, 534 (Mo.App. 2007). The regulations that must be followed to satisfy the foundational requirements are

set forth in 19 C.S.R. 25–30. *Hill v. Dir. of Revenue State of Mo.,* 985 S.W.2d 824, 827 (Mo.App.1998). Section 19 C.S.R. 25–30.060 establishes the operational checklist for the approved breath analyzers and states the operator of a breath analyzer machine must complete an operational checklist for each test at the time the test is given. *Id.* The operator of the machine is required to conduct a 15–minute observation period prior to obtaining a breath sample, during which time the operator shall reasonably ensure that the test subject does not smoke, vomit, or have any oral intake. 19 C.S.R. 25–30.060(7); 19 C.S.R. 2530.011(2)(H). The 15–minute ob-

In our view, this argument is misdirected because it conflates the admissibility of evidence with the credibility of evidence. We see nothing in the record to indicate that the trial court excluded the .209% BAC breathalyzer test result. Instead, it appears the trial court simply did not believe that result was reliable.[4] As noted above, we defer to that factual determination.

If the Director is arguing that the trial court had to believe the second breath test result was reliable, we disagree. In *O'Rourke*, the driver blew into the breathalyzer machine three times within 10 minutes. On the last attempt, the machine produced a .172% BAC result. At trial, the driver challenged the accuracy of the BAC result because the officer did not wait an additional 15 minutes between tests. The trial court found that the test result was not reliable. On appeal, the Director argued that the trial court's judgment resulted from an erroneous declaration or application of the law because no additional 15–minute observational period was legally required. The eastern district of this Court rejected that argument for reasons which are equally applicable to the case at

> Director's position is that once he satisfies the *prima facie* foundational requirements for admission of the test results, those results are unassailable

absent expert testimony presented by the driver that the events surrounding the procurement of the breath test result could affect the accuracy or validity of the results. Such an argument implicitly relies upon a presumption that the Director's evidence is not only admissible but also is true and shifts the burden of proof to the driver. Following the Missouri Supreme Court's opinion *White v. Dir. of Revenue*, 321 S.W.3d 298 (Mo. banc 2010), such position is not supported by precedent. In *White*, the Missouri Supreme Court overturned two decades of precedent misapplying the assignment of burden of proof found in Section 302.535. *White*, 321 S.W.3d at 305. *White* held Director's burden of proof has two components—the burden of production, meaning the duty to introduce evidence sufficient to submit the case to the factfinder, and the burden of persuasion, meaning the duty to convince the fact-finder to view the facts favorably to that party. *Id.* at 304–305. *White* specifically overruled prior cases to the extent those cases applied Section 302.535 "to create a presumption of validity of the director's evidence, to place a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the

servation period is intended to ensure that any alcohol in a test subject's mouth has time to dissipate before a breath sample is taken so that mouth alcohol does not affect the accuracy of a test result. 19 C.S.R. 25–30.060(7); *Hill*, 985 S.W.2d at 828.

4. This view of the record is consistent with Johnson's argument below and her reliance on *Martin v. Director of Revenue*, 142 S.W.3d 851 (Mo.App.2004). *Martin* also involved an "invalid sample" from the first breath test. *Id.* at 853. Less than five minutes later, the officer gave the driver a second test, which showed the driver's BAC of .166%. *Id.* at 854.

The relevant Missouri regulations at the time were silent as to what procedure should be followed when an "invalid sample" reading was obtained. *Id.* at 856–57. At trial, both the Director and the driver presented expert testimony on the issue of whether an additional 15–minute observation period was necessary after an invalid sample result was generated. *Id.* at 854. The trial court found the Director's evidence less credible than that of driver, and this Court held that the "trial court's determinations were within the prerogative afforded it as the trier of fact." *Id.* at 857.

trial court to disbelieve the evidence on a contested issue, or to require written factual findings absent a request by a party[.]" *Id.* at 307. To the extent Director's argument relies upon a presumption of the validity of his evidence and shifts the burden of proof to the driver pursuant to Section 302.535, Director's points on appeal are denied. *O'Rourke,* 409 S.W.3d at 448–49. Accordingly, the trial court did not erroneously declare or apply the law.

■ The Director next argues the trial court's judgment was "unsupported by any evidence." In an attempt to distinguish *Martin,* the Director argues that "[i]f Johnson had produced an expert witness to testify that the validity of the test was affected by the officer's failure to carry out a second observation period and/or had introduced into evidence portions of the Intoxilyzer Manual stating that a second observation period was necessary, there would have been substantial evidence to support the trial court's judgment.... That was simply not the case."

■ As noted above, it was the Director's burden to prove by a preponderance of the evidence that: (1) Johnson was arrested on probable cause for violating an alcohol-related offense; and (2) Johnson's BAC exceeded the legal limit of .08 percent. *See White,* 321 S.W.3d at 309 n.11; § 302.505.1; § 302.535.1. "The director's burden of proof has two components-the burden of production and the burden of persuasion." *White,* 321 S.W.3d at 304 (footnote omitted). The burden of production is a party's duty to introduce enough evidence on an issue to have that issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as summary judgment or a

directed verdict. *Id.* at 304–05. "By also placing the burden of 'adduc[ing]' evidence on the director, in addition to its assignment of the burden of proof to the director, the legislature emphasized its intention that it is the director who must bear the burden of producing evidence." *Id.* at 305; see § 302.535.1. The burden of persuasion is a party's duty to convince the fact-finder to view the facts favorably to that party. *White,* 321 S.W.3d at 305.

■ The Director's argument fails because Johnson was under no obligation to present expert testimony to refute the Director's documentary proof. Instead, "it is the director who must bear the burden of producing evidence." *White,* 321 S.W.3d at 304. As our Supreme Court explained:

> When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.

*Id.* at 305 (internal citations and quotation marks omitted). In addition, the trial court specifically left the record open to submit "any evidentiary documents you want to submit as with regard to the Department of Health regulations or the Intoxilyzer." The Director failed to do so. As the trier of fact, the trial court had a right to draw an adverse inference against the Director for failing to produce the operating manual for the Intoxilyzer 5000 after being given the opportunity to do so.[5]

---

5. In *O'Rourke v. Director of Revenue,* 409 S.W.3d 443 (Mo.App.E.D.2013), the eastern district of this Court noted that the "DHSS's

Breath Alcohol Program Type III Operator Manual recommends that, in the event the Intoxilyzer 5000 displays the message 'Invalid

Therefore, the trial court acted well within its prerogative as the fact-finder by deciding that the second .209% BAC result was unreliable. *See White,* 321 S.W.3d at 308; *O'Rourke,* 409 S.W.3d at 449; *Martin,* 142 S.W.3d at 857. Because Johnson bore neither the burden of persuasion nor production in this proceeding, the judgment in her favor required no evidentiary support.

The Director's point is denied, and the judgment of the trial court is affirmed.

AUTHOR GARY W. LYNCH, J. and MARY W. SHEFFIELD, JJ., concur.

Sample' the operator should 'Check mouth, wait an additional 15 minutes, try one or more tests.'" *Id.* at 448 n. 2; *see also Collins v. Director of Revenue,* 399 S.W.3d 95, 103 (Mo.App.2013) (Witt, J., concurring) (writing separately "to emphasize the importance of the fifteen-minute observation period in reaching a scientifically reliable result on the breathalyzer test and to suggest that it may be time for the Missouri breath alcohol testing program protocols to be updated to comply with the standards in the industry").