

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ROBIN L. SCHMIDT, | ) | No. ED108175 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 1811-CC00784 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Honorable Matthew E.P. Thornhill |
| | ) | |
| Appellant. | ) | Filed:  September 1, 2020 |

James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

## OPINION

The Director of Revenue appeals the trial court's amended judgment issued on July 31, 2019 ordering the Director to remove the license revocation from Respondent Schmidt's driving record and reinstate her driving privileges because the court found to be invalid the search warrant used to obtain Schmidt's blood samples on the basis that the warrant application contained inaccuracies and was insufficient to support a probable cause finding, and additionally, that the warrant *application* was improperly altered by the arresting officer and prosecuting attorney after the warrant had already been issued by the warrant court.  We reverse because we find that the warrant court had a substantial basis to find that probable cause existed to support

the issuance of the warrant and neither the warrant application's inaccuracies nor the post-issuance alteration rendered the warrant invalid.

## Background

On the evening of July 2, 2017 at around 11:15 p.m., Schmidt was driving her vehicle eastbound on Route 370 in St. Charles County, Missouri when she was stopped by Weldon Spring, Missouri police officer Brodie Waaso for two traffic offenses: failure to drive in a single lane and failure to maintain her speed. After Officer Waaso approached the vehicle and made contact with Schmidt through the driver's side window, he asked for her driver's license and noticed that her speech was slurred and her eyes were bloodshot and watery. Schmidt admitted that she had been drinking earlier that night, but that she felt able to drive because she stopped drinking around 10:00 p.m. Officer Waaso requested that Schmidt exit her vehicle and walk toward his patrol car, which she did without difficulty.

Once Schmidt was seated inside the patrol car, Officer Waaso smelled a strong odor of alcohol from her breath prompting him to request that Schmidt submit to field sobriety tests. Although Schmidt was initially hesitant to perform any tests claiming that she had on-going health issues which would prevent her from passing them and alternatively that she was too scared to undergo any tests because she had been drinking earlier that night, she ultimately agreed. In the first test conducted by Officer Waaso, Schmidt was asked to recite the alphabet without singing it, which she did correctly. During the second test, wherein Schmidt was asked to count backwards from the number 81 to 67, Schmidt counted backwards from 81 to 58 before realizing she was supposed to stop at 67. The third and final test that Schmidt performed, although she did not complete, was the horizontal gaze nystagmus (HGN) test which required Schmidt to track the tip of Officer Waaso's finger with her eyes while he looked for six potential

2

clues of intoxication. Officer Waaso successfully verified the presence of the first clue, but could not continue to administer the test any further due to Schmidt's unwillingness or her alleged inability to properly follow his instructions. Afterwards, Officer Waaso asked Schmidt to submit to a preliminary breath test which she refused stating "I guess just take me to jail. I'm too scared to. I'd rather get my blood drawn."

Officer Waaso arrested Schmidt for driving a motor vehicle while intoxicated. He then read to her Missouri's implied consent statutory notice which provides that by driving on Missouri's public roads that night, Schmidt consented to take a chemical test to detect the presence of alcohol in her body, and in the event she refused, her license was subject to being revoked for one year. Nevertheless, Schmidt refused Officer Waaso's request that she perform a chemical breath test so Officer Waaso drove Schmidt to the St. Charles County Department of Corrections and submitted to the court a search warrant application to draw Schmidt's blood in order to determine whether Schmidt was driving while intoxicated. The court found probable cause to issue the warrant and authorized its execution.

Sometime between when the warrant was issued at 1:29 a.m. and when Schmidt was transported to the hospital at 1:45 a.m., Officer Waaso noticed that while Schmidt's name and identifying information appeared correctly throughout the warrant application, on one occasion a former arrestee's name appeared instead of Schmidt on the application. On the warrant itself, Schmidt's name and identifying information was correct.

So Officer Waaso contacted the prosecuting attorney who advised that he should cross out the wrong name on the application and write in "Schmidt" which he did. This was done without the knowledge or approval of the warrant judge. No changes were made to the warrant itself. Officer Waaso then delivered the warrant to the staff nurse at the hospital who withdrew

3

two blood samples from Schmidt, each thirty minutes apart. The samples showed Schmidt's blood alcohol content to be .132 percent and .123 percent, both amounts in excess of the legal limit.

The Director ordered Schmidt's license revoked pursuant to § 302.505. Schmidt then filed a petition in the St. Charles County Circuit Court for a trial de novo challenging the revocation of her license. At the January 24, 2019 trial, Schmidt objected to the admission of her blood test results. She claimed that the warrant application was invalid because it did not contain certain required information including the time the warrant application was made; that the application contained incorrect information including a surname and pronoun different than Schmidt's; and it fallaciously stated that she performed poorly on multiple tests and refused others. Schmidt also asserted that the conduct of the investigating officer and the prosecuting attorney in altering the warrant application without the issuing court's knowledge or approval was improper and invalidated the warrant.

On April 16, 2019, the court issued its judgment sustaining the revocation of Schmidt's license upon a finding that the warrant was presumed valid despite the claimed defects on the warrant application. Schmidt moved for a new trial or amended judgment arguing again that the warrant application contained incorrect and misleading information. After reviewing Schmidt's motion, the court reversed itself and issued its amended judgment on July 31, 2019 ordering the Director to remove the revocation from Schmidt's driving record and reinstate her driving privileges. The court found that it was the Director's, not Schmidt's, burden to prove the warrant's validity and because the Director failed to show that the warrant application, altered after the warrant's issuance and allegedly containing materially misleading information, was sufficient to support a probable cause finding, Schmidt's blood test results—which undoubtedly

4

proved that Schmidt's blood alcohol content was over the legal limit at the time of her arrest—must be excluded from evidence. The Director's appeal follows.

**Standard of Review**

Appellate courts review the trial court's judgment in a license suspension or revocation case like any other court-tried civil case. *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016). The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*; *see also Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When evidence is contested by disputing a fact in any manner, an appellate court defers to the trial court's determination of credibility. *Johnson v. Dir. of Revenue, State*, 411 S.W.3d 878, 881 (Mo. App. S.D. 2013). "A trial court is free to disbelieve any, all, or none of that evidence." *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010)). When facts are not contested and the issue is one of law, our review is de novo, and no deference is given to the trial court's determination. *Johnson*, 411 S.W.3d at 881.

**Discussion**

I.    *A search warrant was required to obtain Schmidt's blood test results.*

In its first point on appeal, the Director claims that the law in effect at the time Schmidt's blood test was administered did not require a search warrant to obtain Schmidt's blood test results and thus the trial court had no legal justification for excluding the results on the basis of an invalid warrant. The Director's argument is based on its assertion that at the time Schmidt's blood sample was drawn, § 577.029, the Missouri statute governing the procedure for chemical tests in license suspension and revocation proceedings, did not require a warrant.

5

For her part, Schmidt does not dispute that § 577.029 applies, but she argues that the version of § 577.029 in effect at the time of trial should apply because that version explicitly requires either "the consent of the patient" *or* "a warrant issued by a court of competent jurisdiction" in order to obtain blood for the purpose of determining blood alcohol content.[1] While we agree with the Director that the controlling law in this case is the version of § 577.029 in effect at the time of Schmidt's blood draw, *Stiers*, 477 S.W.3d at 618-19[2], we nevertheless reject the Director's argument because we find that a warrant was still required pursuant to federal and state constitutional guarantees of freedom from unreasonable searches and seizures.

Under the Fourth Amendment of the U.S. Constitution and article I, section 15, of the Missouri Constitution, a search and seizure that is not conducted by consent or pursuant to a warrant is presumed unreasonable unless "it falls within one of a carefully defined set of exceptions, many of which are based on the presence of exigent circumstances."[3] *State v. Smith*,

---

[1] Effective in 2018, section 577.029 was amended to include consent or a court-issued warrant as a requirement for a blood draw. The statute provides: "A licensed physician, registered nurse, phlebotomist, or trained medical technician, acting at the request and direction of the law enforcement officer under section 577.020, shall, *with the consent of the patient or a warrant issued by a court of competent jurisdiction*, withdraw blood for the purpose of determining the alcohol content of the blood . . . ." (Emphasis added).

[2] Our Court in *Stiers* decided a similar issue. There, the court discussed § 577.037, which sets out the rules governing admission of breath test results and one of the requirements for admission is that the breath test be validly performed in accordance with DHSS regulations. 477 S.W.3d at 618. The court found that "[w]hile the rules of evidence govern the procedure for admission of evidence and so the rules in effect at trial are followed, that is an entirely different issue from whether the regulations governing how to determine whether a breath analyzer was validly calibrated at the time it was used to test a driver's blood alcohol were followed." *Id.* Therefore, "[t]he validity of a breath test necessarily must be determined and fixed at the time the test is conducted." *Id.* at 619. We find the same logic applies to the issue here—whether a warrant was required to draw Schmidt's blood must be determined at the time her blood was drawn. To conclude otherwise would require an officer to do something substantively different in the process of collecting a blood sample because of a law that came into existence later.

[3] For example, in a recent U.S. Supreme Court case, the Court held that a warrantless blood draw may be justified where a driver suspected of drunk driving is unconscious and therefore cannot be given a breath test. *Mitchell v. Wisconsin*, 588 U.S. __, 139 S.Ct. 2525, 2531 (2019).

6

134 S.W.3d 35, 37 (Mo. App. E.D. 2003) (quoting *State v. Rutter*, 93 S.W.3d 714, 723 (Mo. banc 2002)). Otherwise stated, absent consent or exigent circumstances, law enforcement officers *must* obtain a warrant to conduct a search and seizure that would invade a constitutionally-protected privacy interest. *Smith*, 134 S.W.3d at 37. In *Missouri v. McNeely*, which also involved a compelled physical intrusion beneath Schmidt's skin and into her veins to obtain a sample of her blood, these principles were applied to the type of search and seizure at issue in this case. 569 U.S. 141, 148 (2013). "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

In Missouri, it is generally recognized that a court may issue a search warrant pursuant to § 542.271 authorizing a blood draw to determine the subject's blood alcohol content and the results are admissible. *Smith*, 134 S.W.3d at 37. Missouri's Implied Consent Law, adopted "to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated," *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 619 (Mo. banc 2002) (quoting *State v. Paul*, 437 S.W.2d 98, 103 (Mo. App. 1969)), provides that any person who drives on the public highways is deemed to have consented to a chemical test in order to determine the alcohol or drug content of the person's blood. § 577.020. However, in tandem with § 577.020, the Missouri legislature also enacted § 577.041, the "refusal" statute, which provides that any person under arrest may expressly refuse to take the test. *Murphy v. Dir. of Revenue*, 170 S.W.3d 507, 511 (Mo. App. W.D. 2005). Where a defendant negates her implied consent under § 577.020 by invoking her right of refusal under § 577.041, as Schmidt did here, the arresting officer may apply for a search warrant which, if issued, authorizes the

7

withdrawal of blood samples to determine blood alcohol content, and the test results of such samples are admissible. *Smith*, 134 S.W.3d at 37.

Therefore, while we recognize that at the time of Schmidt's blood draw, Missouri statutes did not yet *require* a warrant in order to draw blood, the Constitution did and does and our case law had already applied those constitutional principles to situations such as this—where a person under arrest for suspicion of driving while intoxicated refuses the chemical test and the arresting officer seeks a blood draw. So, we deny the Director's first point because we find that in the absence of Schmidt's consent or exigent circumstances, which the Director did not allege here, Officer Waaso was constitutionally required to obtain a warrant in order to authorize the blood draw.

## II.    *The warrant used to obtain Schmidt's blood test results was valid.*

We now turn to the Director's second and third points, which we consider together, that assert the trial court erred by finding that the warrant issued by the court at Officer Waaso's request was invalid. In the second point, the Director argues that the trial court's holding that the warrant contained factually incorrect information erroneously implicated the *Franks*[4] standard which would have required Schmidt to show that Officer Waaso intentionally or recklessly misstated facts in his affidavit. Likewise, the Director's third point asserts, in part, that the trial court erred by finding the warrant was invalid because there was no evidence of deliberate falsehoods or reckless disregard for the truth by Officer Waaso in the warrant application.

However, since we find this case did not involve any allegations by Schmidt or findings by the trial court that Officer Waaso intentionally or recklessly misstated facts in his affidavit,

---

[4] In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the U.S. Supreme Court established the procedure for allowing a criminal defendant to challenge the veracity of a sworn statement submitted by police in support of a search warrant application.

8

we find the court properly considered the issue of warrant validity without invoking the *Franks* analysis. Accordingly, we reject the Director's second point in its entirety and its third point as it relates to any discussion of the *Franks* standard.

Our focus then is on the remaining assertion in the Director's third point that the trial court erred by finding that the warrant was invalid because there was a sufficient basis for a probable cause finding to issue the warrant. We turn once again to the Fourth Amendment which ensures against "unreasonable searches and seizures" and provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018). As discussed earlier, article I, section 15 of the Missouri Constitution provides coextensive protection against unreasonable searches and seizures. *Id.*

Missouri's General Assembly recognized these constitutional protections and in 2005 enacted § 542.276 which provides that "[a] search warrant shall be deemed invalid if it was issued without probable cause[.]" § 542.276.10(3). The Supreme Court has defined "probable cause" sufficient to justify the issuance of a search warrant as "a fair probability that contraband or evidence of crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) (finding that probable cause "does not demand any showing that such belief be correct or more likely true than false."). And while the meaning of probable cause is a legal issue, whether probable cause exists in a particular case is a question of fact to be decided by the judge or magistrate considering the warrant application. *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990).

Thus, appellate review of the warrant judge's probable cause determination —whether by this Court or by the trial court—is <u>not</u> de novo. *Id.* In fact, Missouri courts give "great

deference to the initial judicial determination of probable cause that was made at the time the warrant issued." *State v. Turner*, 471 S.W.3d 405, 416 (Mo. App. E.D. 2015) (quoting *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007)). Our duty is only to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed for the search and we will reverse a finding of probable cause only if the *issuing* magistrate or judge clearly erred in determining, based on the totality of the circumstances, that probable cause existed. *Id.*

Besides for lack of probable cause, a search warrant will be rendered invalid "[i]f it does not describe the person, place, or thing to be searched or the property, article, material, substance, or person to be seized with sufficient certainty[.]" § 542.276.10(5). However, an error in description does not automatically invalidate a search warrant. *See State v. Hardy*, 497 S.W.3d 836, 838 (Mo. App. S.D. 2016) ("Where one part of the description of the [person] to be searched is inaccurate, but the description has other parts which identify the [person] to be searched with particularity, searches pursuant to such warrants have been routinely upheld."); *see Douglass*, 544 S.W.3d at 190 (applying the severance doctrine to allow invalid portions of a search warrant to be "redacted" or "severed" from the valid portions so long as the invalid portions can be meaningfully severed from the valid portions and have not created an impermissible general warrant). Importantly, there is a strong preference for searches conducted with a warrant and we "should not quash a warrant by construing it in a hypertechnical, rather than a commonsense, manner." *Turner*, 471 S.W.3d at 416 (quoting *Neher*, 213 S.W.3d at 49).

Here, the trial court amended its judgment to find that the warrant was invalid because the warrant application contained incorrect or what it considered to be materially misleading information insufficient to support a probable cause finding, and because the warrant application was altered after it was issued by the court without the approval or even knowledge of the

warrant-issuing judge. We first note that the record before us abounds with evidence that the information contained in the affidavit and warrant application provided sufficient probable cause to issue the warrant, and furthermore, that the affidavit and warrant application described Schmidt with sufficient certainty to leave little doubt that Schmidt was the subject of the search. So, while we recognize that an incorrect surname appeared on the application on one occasion and an incorrect pronoun on another[5], we find those inaccuracies to be inconsequential in light of the affidavit and warrant application as a whole.

In his affidavit, Officer Waaso stated that he personally observed Schmidt commit multiple traffic violations, including the failure to maintain a single lane and the failure to maintain her speed. After he pulled her over, Officer Waaso observed that Schmidt's speech was slurred, her eyes were bloodshot and watery, and her breath wreaked of alcohol. He described in detail his conversation with Schmidt, especially Schmidt's own admissions to drinking prior to her driving and her reluctance to submit to field sobriety tests as a result. When Schmidt eventually agreed to perform the tests, Officer Waaso tracked her performances. He noted in his affidavit that during the counting test, Schmidt failed to stop counting as instructed and that he had to suspend the HGN test because Schmidt stopped following his instructions. He also noted that Schmidt refused the chemical breath test after he placed her under arrest.

Officer Waaso summarized these details from his affidavit in the warrant application, stating: "Schmidt performed poorly on her field sobriety tests, and refused others." In its amended judgment, the trial court found this particular statement inaccurate because Schmidt only performed poorly on one test—the counting test—and she only refused one test—the breath

---

[5] We also acknowledge that the warrant application did not include the time of its making as required by § 542.276(2). However, since the statute does not include this requirement as a means for invalidating a search warrant under § 542.276(10), we will not do so.

11

test. We disagree with the trial court's characterization because we do not find Officer Waaso's statement necessarily inaccurate considering that he had to terminate the HGN test early due to Schmidt's noncompliance and Schmidt's statement to Officer Waaso that she was unable perform certain tests due to alleged on-going heath issues. Therefore, we do not find it unreasonable for the *issuing* judge to believe that statement properly characterized Schmidt's performance on the field sobriety tests.

Moreover, on over 50 occasions in the two-page, single-spaced narrative in Officer Waaso's affidavit describing the incident and the two-page warrant application itself, Schmidt was correctly identified and referred to as the arrestee. The application requested "(2) blood draws . . . from the body of Robin Lea Schmidt White Female 04/23/1969 5'04" 130 lbs . . ." and included her driver's license and social security numbers. In short, we find the affidavit and warrant application left little doubt that Schmidt was the DWI suspect here and the subject of the requested search. Thus, looking at the warrant application as a whole, we conclude the warrant court had a sufficient basis to issue the warrant notwithstanding the inaccuracies on the application.

The question remains whether the alteration of the warrant application <u>after</u> the warrant was issued voids the warrant judge's probable cause finding or otherwise renders the warrant invalid. We find that it does neither. Laying aside our concerns with Officer Waaso's and the prosecuting attorney's conduct in altering the application[6], our review is of the warrant judge's

---

[6] As for the alteration to the warrant application made by Officer Waaso on the advice and with the blessing of the prosecuting attorney, we express our strong disapproval of any changes being made to a warrant application, affidavit, or the warrant itself <u>without</u> the knowledge and approval of the warrant judge. It is clear that neither Officer Waaso nor the prosecuting attorney had the authority to alter the warrant application in question, *see Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972) (discussing that a warrant's issuance must be severed from and disengaged from activities of law enforcement to be neutral and detached as required by Fourth Amendment), and

probable cause finding based on the officer's affidavit and warrant application <u>before</u> it was altered. The subsequent alteration is irrelevant to our review because the warrant judge reviewed the unaltered application. As such, the warrant judge was aware of the inaccuracy Officer Waaso later corrected but still decided that the detailed information in the affidavit and on the application, that abundantly identified Schmidt as the DWI suspect and subject of the requested search, was sufficient on which to find probable cause and issue the warrant.

And since we give "great deference to the initial judicial determination of probable cause that was made at the time the warrant issued[,]" *id.* (quoting *Neher*, 213 S.W.3d at 49), we conclude that the issuing court had probable cause to issue the warrant.

## Conclusion

For the reasons set forth above, we reverse the trial court's amended judgment excluding Schmidt's blood test results and remand for further proceedings consistent with this opinion.

 

 

_____

James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J., concur.

---

thus, Officer Waaso's insertion of "Schmidt" on one portion of the warrant application was improper and invalid. Nevertheless, we reject the notion that Officer Waaso's and the prosecuting attorney's conduct reflected any ulterior or untoward motive to deceive anyone or to prejudice Schmidt. After Officer Waaso became concerned about the inaccuracy, he contacted the prosecuting attorney. He then corrected the document in handwriting directly on the application itself demonstrating no intent to deceive.